THE STATE ex rel. GEORGE U. HEIMBURGER, Appellant, v. ROLLA WELLS, Mayor of St. Louis.

Division Two, March 31, 1908.

1. **JUDICIAL POWER: Mayor.** The mayor of St. Louis is not a. judicial officer, nor under the terms of the Constitution, which distributes the powers of government into the legislative, executive and judicial departments, is he a judge connected in any way with the judicial department of the State.

2. ————: ————: **Removal of Officer.** The mayor of St. Louis, in hearing and determining charges against the Commissioner of Public Buildings, and in removing him from office for incompetency and neglect of official duty, does not act as a judicial officer, and he is not prevented by the Constitution from removing the officer, though in the hearing he may pursue quasi-judicial methods.

3. ————: ————: **Validity of Charter.** Nor is the city charter, which gives the mayor power to remove an officer for cause, unconstitutional. It does not vest him with judicial power; and, besides, the Constitution itself (Sec. 7, art. 14) provides, that the General Assembly shall, in addition to other penalties, provide for the removal of city and county officers.

4. **MAYOR: Removal of Officer: Law of Land.** Charter provisions to the effect that the mayor is the chief executive officer of the city and expressly making it his duty to see that the city laws and ordinances are respected and enforced, include all laws and ordinances respecting his right and power to remove for misconduct and neglect of duty officers occupying positions in other departments of the city government and appointed by the mayor. And a removal by him, in pursuance to such charter provisions and valid ordinances enacted in pursuance thereto, is not violative of the law of the land.

5. ————: ————: ————: **Disqualification: Charges Preferred by Secretary.** ...or is the mayor disqualified from hearing and determining the charges against the officer by the fact that they were preferred by his secretary or by himself. It does not follow that, because the charges are so preferred, the mayor is prejudiced or biased, or has any other interest in the proceedings except to ascertain whether or not the charges are true. The only presumption that can be indulged, in the absence of any showing to the contrary, is that he is acting in obedi-

ence to the organic law of the city which makes it his duty to see that the officers appointed by him are not derelict in their official duties.

6. ———— : ———— : **Charter Provisions: Repeal.** The charter provisions of St. Louis, authorizing the mayor to remove, for cause, administrative officers appointed by him, are not unconstitutional, nor were they expressly or by implication repealed by the Act of April 23, 1877.

7. ———— : ———— : **Certiorari: Evidence.** The writ of *certiorari* brings up only the record proper, and not the evidence. A writ of *certiorari* issued out of the circuit court and directed to the mayor, for a review of a proceeding had before him in which relator was tried upon charges preferred and removed for incompetency and neglect of official duty from the office of Commissioner of Public Buildings, is to be determined upon the record alone, and the evidence taken before the mayor will not be considered by the court.

Appeal from St. Louis City Circuit Court.—*Hon. Wm. M. Kinsey,* Judge.

AFFIRMED.

*Leverett Bell* and *A. M. Frumberg* for appellant.

(1) The mayor has no judicial power, and the clauses in the St. Louis charter that attempt to confer such power on him are in violation of the State Constitution. Albright v. Fisher, 164 Mo. 56; State v. Stone, 120 Mo. 428; High, Ex. Leg. Rem. (2 Ed.), sec. 118; Dullam v. Wilson, 53 Mich. 393; sec. 1, art. 6, State Constitution; State v. St. Louis, 90 Mo. 19; State v. Brown, 57 Mo. App. 199; Magner v. St. Louis, 179 Mo. 502; State v. Walbridge, 69 Mo. App. 669; sec. 7, art. 14, State Constitution. (2) The mayor acted as prosecutor and judge on the trial of the relator in violation of the law of the land, and his judgment was and is a nullity. R. S. 1899, secs. 1602, 1612; Stockwell v. White, 22 Mich. 341; Oakley v. Aspinwall, 3 Comst. 547; Kansas City v. Knotts, 78 Mo. 359; Drainage & Levee Dist. v. Jamison, 176 Mo. 571. (3)

The provisions of the charter of St. Louis under which the mayor removed relator from office are not in harmony with the Constitution and laws of the State, and furthermore, were repealed by the Act of April 23, 1877. Ewing v. Hoblitzelle, 85 Mo. 75; Laws 1877, p. 346; R. S. 1899, secs. 8853 to 8856; State v. Walbridge, 119 Mo. 383; sec. 7, art. 14, State Constitution.

*Charles W. Bates* and *Benjamin H. Charles* for respondent.

(1) The writ of *certiorari* only brings up the record, and can only reach errors or defects which appear on the face of the record, of the officer or board to which it is issued, and which are jurisdictional in their nature. State ex rel. v. Smith, 101 Mo. 175; State ex rel. v. Walbridge, 62 Mo. App. 163; State ex rel. v. Smith, 176 Mo. 90; State ex rel. v. Baker, 170 Mo. 390; State ex rel. v. Bland, 168 Mo. 7; Railroad v. State Board of Equalization, 64 Mo. 308; State ex rel. Parker-Washington Co. v. St. Louis, 207 Mo. 354; State ex rel. v. Board, 108 Mo. 235; Ward v. Board, 135 Mo. 319; School Dist. v. Pace, 113 Mo. App. 134; State ex rel. v. Mulvihill, 113 Mo. App. 324. And evidence heard by such officer or board cannot be considered, even if it has been certified with the record proper. State ex rel. v. Walbridge, 69 Mo. App. 666, and other cases cited, supra. (2) The power conferred upon the mayor by the charter is not repugnant to any constitutional or statutory provision. State ex rel. v. Walbridge, 119 Mo. 393; State ex rel. v. Sheppard, 192 Mo. 506; State v. Boyd, 196 Mo. 66, and other cases, supra. Repeals by implication are not favored. State ex rel. v. Wilder, 197 Mo. 35, and other cases, supra. (3) The mayor had the power to remove relator for cause, after notice of the charges and specifications and upon a hearing. St. Louis Charter, art. 4, secs. 5, 15, 16; State ex rel. v. Walbridge, 119 Mo.

394; Shurtleff v. United States, 189 U. S. 316. (4) The mayor was not disqualified. Mechem on Public Officers, sec. 517, p. 341; Works on Jurisdiction, pp. 409, 410; State ex rel. v. Lupton, 64 Mo. 415; State ex rel. v. Slover, 113 Mo. 202; Mayor of Lexington v. Long, 31 Mo. 371; State ex rel. Parker-Washington Co. v. St. Louis, 207 Mo. 354; People v. Diehl, 53 App. Div. 645, affirmed 165 N. Y. 643; People v. Police Commissioners, 10 Hun 108, affirmed 76 N. Y. 613; People ex rel. v. Common Council, 85 Hun 601; Fuller v. Ellis, 98 Mich. 96; Andrews v. King, 77 Me. 224; Planet v. Everest, 29 Mich. 19; Township Board v. Holihan, 46 Mich. 127; State v. Crane, 36 N. J. L. 397; State v. Board, 36 N. J. L. 404; Ayres v. Newark, 49 N. J. L. 170; State ex rel. v. Common Council, 90 Wis. 612; Foote v. Stiles, 57 N. Y. 399; In re Ryers, 72 N. Y. 14; Grundy Co. v. Tennessee, 94 Tenn. 294. Disqualification is not jurisdictional, and is purely statutory. Sutton v. Coale, 73 Mo. App. 522; Hockaday v. Sturgeon, 65 Mo. App. 189; Huthsing v. Maus, 36 Mo. 101; State v. Anderson, 96 Mo. 247; State v. Callaway, 154 Mo. 96; People ex rel. v. Jerome, 36 N. Y. Misc. 256; People v. Commissioners, 10 Kan. 106; People v. Williams, 24 Cal. 31; In re David Jones, 103 Cal. 397; People v. Compton, 123 Cal. 412; Patterson v. Conlan, 123 Cal. 453; Dreschel v. State (Tex.), 39 S. W. 648.

FOX, P. J.—This cause is before this court upon appeal by the relator from the action of the circuit court of the city of St. Louis in overruling his motion to quash certain proceedings instituted before the respondent as mayor of the city of St. Louis, to remove the relator, and a judgment in favor of respondent rendered on February 6, 1905.

This is a proceeding on a writ of *certiorari* issued by the circuit court of the city of St. Louis at the relation of George U. Heimburger, for a review of a pro-

·ceeding had before the mayor of said city in the trial
of relator for official incompetency and negligence as
·commissioner of public buildings. The charges were
prepared and signed by James G. McConkey, who was
the secretary to the mayor. The general charge ·was
·''official incompetency and gross official negligence.''

Specification No. 1 was ''respecting the poorhouse·
·contract,'' that is, it was charged concerning that sub-
.ject that the relator (a) in approving and presenting
to the board of public improvements plans which were
palpably faulty in that the steel work required was
·far in excess of the proper amount, to-wit, about 63,000
pounds, thereby subjecting the city. to unnecessary ex-
penses of from $1,500 to $2,000 for excessive steel, and
about $600 additional for fire-proofing and plastering
resulting therefrom; and all ,this after his attention
·was directly called thereto before completion of the
·plans and in ample time to have remedied the same.
(b) In recommending a change, and inducing the con-
·tractors to expect a change, in the contract after the
formal letting so as to substitute plans requiring 63,000
pounds of steel less than the contract called for, upon
·allowance to the city of an insufficient rebate; when
said commissioner knew that any such change of a
formally executed contract with or without rebate was
·unlawful and unauthorized. (c) ·Such proceedings re-
·sulted in unnecessarily delaying the completion of the
·steel work on said building.

Specification No. 2, ''respecting workhouse con-
·tract.'' The charge concerning this subject against
relator was, (a) in directing a material alteration, for
·which there was no authority, of the ·contract after the
·letting thereof and commencement of work, said charge
consisting in the substitution of concrete columns and
·beams in place of iron, as called for by the contract;
said concrete work being both inferior in quality and
·less in price by from $500 to $600 than the iron work

required by the contract. (b) In causing to be inserted in the contract an unusual and unlawful provision, to-wit: "Concrete Floors. . . . Contractors may propose for any system that is acceptable to the commissioners, but must furnish complete plans and specifications for the same and must conform in results to that herein specified. If the steel framing as laid out does not conform to the system adopted, it must be changed to suit such system . . .," which had never been inserted in any other of the city contracts, and under which it became possible to claim (though erroneously) that authority existed in 'the commissioner to make the alteration. (c) In unnecessarily delaying and permitting the delay of the work so that it could not be completed in the time required by the contract.

Specification No. 3, "respecting city hospital contract." The charge against relator concerning this subject, was (a) in directing an unauthorized alteration in the contract in that part providing for brass work and ordering the substitution, without authority, of enameled cast iron, a material of less value, to-wit, about $800, and not adapted for the purposes intended. (b) In unnecessarily delaying and permitting the delay of the work on said building specified as marble work, where the metal above referred to in specification (a) was to be used, so that the same could not be completed in the time required.

Specification No. 4, "respecting the repairs in court-house." The charge against relator concerning this subject, was (a) in wilfully permitting a departure from contract in that part relating to "mill work" by allowing in place of veneered work called for solid wood-work of much less value, to-wit, $300, and further, after having unlawfully permitted said change, in neglecting to take steps to exact a rebate and in declining to recommend the acceptance of a rebate on

account of said inferior and cheaper work after his attention had been expressly directed thereto.

Specification No. 5, "respecting retention of unfit employee." The charge against relator concerning this subject, was (a) in wilfully keeping in the employ of the commissioner of public buildings one Harry Hoel, after said commissioner knew that said Hoel was guilty of officially reprehensible and dishonest acts, and that his further retention was injurious to the city's interest, to-wit: Said Hoel, on or about the 21st day of August, 1903, did present to John T. Henry (owner) or A. M. Baker (contractor) who was constructing a building for which the law required a permit, a notice under the seal of the building commissioner's office, for the purpose of being shown to the police department, to the effect that no permit was required to erect the building there being erected, when said act of Hoel was entirely outside the scope of his employment at that time, and was known by him to be unwarranted and was unlawful; said Hoel without warrant or authority having affixed the official seal of the building commissioner's office to said notice.

Specification No. 6, "respecting failure to enforce insane asylum contract relating to painting and cleaning." The charge against the relator concerning this subject, was (a) in failing to enforce the provisions of contract requiring "all copper work of dome, gutters, down-spouts, etc., to be cleaned with acid and oiled with linseed oil," and in allowing the same to be painted instead of cleaned and oiled, as required by said contract, and in excusing, without authority, the contractor from cleaning the dome upon payment of an insufficient and inadequate rebate or allowance to the city, to-wit, the sum of $10, although the difference to be allowed (if any exemption were permissible) should have been much larger.

A copy of these charges and specifications was

duly served upon relator, as shown by the abstract. The relator appeared both in person and by counsel at the hearing before the mayor; a large amount of testimony was heard both for and against him; witnesses were summoned in his behalf and testified for him, and the mayor, acting in official capacity, found the defendant guilty of charges and specification No. 1, clauses a, b and c; specification No. 2, clauses a, b and c; specification No. 3; specification No. 4 and specification No. 6, and thereupon made the following order: "And I therefore remove said George U. Heimburger from the office of Commissioner of Public Buildings of the city of St. Louis." And on the same day the mayor notified the relator of this action. On the next day the relator sued out a writ of *certiorari*, in the petition for which he asked the court to direct a transcript of the proceedings to be certified by the mayor; the writ, however, issued at his request, commanded not only a transcript of the proceedings, but also the evidence heard by the mayor. The respondent fully complied with the order of the court, and accompanied the transcript of the proceedings with a complete transcript of the evidence heard, objecting, however, to its introduction in evidence at the hearing. Upon the compliance of the respondent with the writ issued by the circuit court and the filing of the transcript of the proceedings before him upon the charges against relator, the relator then filed in the circuit court his motion to quash such proceeding. This motion was taken up by the court and heard and considered, and on the 6th day of February, 1905, was overruled and judgment rendered for the defendant. A timely motion for new trial was filed by the relator, which was overruled on April 1, 1905, and from the action of the court upon this motion and entry of judgment in favor of respondent, the relator in due time and proper form prosecuted his appeal to this court and the record is now before us for consideration.

## OPINION.

The record in this cause discloses that the errors complained of upon which the appellant predicates his grounds for the reversal of this judgment, are as follows:

FIRST. That the mayor has no judicial power and the clauses in the St. Louis charter that attempt to confer such power upon him are in violation of the State Constitution. In other words, it is insisted by learned counsel for appellant that the mayor, in the trial of the relator upon the charges preferred indicated in the statement of this cause, and his final order based upon such hearing, was exercising judicial power, which under the Constitution of this State he had no right to exercise, and in its last analysis the contention is that the mayor is without authority to hear and dispose of the charges in the manner that he did in this proceeding.

SECOND. It is contended that the mayor acted in this proceeding as prosecutor and judge on the trial of the relator in violation of the law of the land, and his judgment was and is a nullity.

THIRD. That the provisions of the charter of St. Louis under which the mayor removed relator from office are not in harmony with the Constitution and laws of the State, and furthermore such provisions of the charter were repealed by the Act of April 23, 1877.

## I.

Directing our attention to the first proposition, relator calls our attention to the provisions of article 3 of the Constitution of this State distributing the power of government into three departments, that is, legislative, executive and judicial, and section one of article six of the Constitution vesting judicial power

210 Sup—39

in the courts of the State. Upon these provisions of the Constitution learned counsel for appellant predicates his contention and seeks to draw the conclusion that, inasmuch as the mayor is an executive officer, he cannot exercise the powers of a judge. It is sufficient to say upon that insistence that in contemplation of the provisions of the Constitution wherein it vests the judicial power in the courts of the State, the mayor is not a judicial officer, nor under the terms of the Constitution is he to be denominated a judge in any way connected with the judicial department of the State. Manifestly one to be a judicial officer must in some way be connected with the judicial department. Judges of judicial tribunals contemplated by the Constitution must be the presiding officers of some tribunal whose jurisdiction or power is defined or prescribed by the Constitution or laws made thereunder.

The function exercised by the respondent mayor in the case at bar cannot be more clearly stated than it is by learned counsel for respondent in their brief, where it is stated that ''it is very evident that when the mayor was presiding at the trial of relator he was not a judge presiding over any tribunal connected with the judicial department of the State. He was simply acting as mayor, the chief executive officer of the city, in a matter in which, under the charter and ordinances of the city, he was required to act, not as a judge, but as an executive officer. So that the Constitution and the laws of the State relating to the judicial department have no application. The functions he was exercising were merely quasi-judicial, and such is the law of this State.''

This proposition was substantially involved in State ex rel. v. Walbridge, 119 Mo. 383. In that case, the relator, who occupied the same position that the relator occupies in the case at bar, that of commissioner

of public buildings, was charged before the mayor
with certain derelictions of official duty and the relator
in that case sought a writ of prohibition prohibiting
the mayor from proceeding to try him on the charges
which had been preferred against him by Robert E. Mc-
Math, president of the board of public improvements.
One of the contentions in that case was substantially
the same as in the case at bar, that is, "that the pro-
ceedings of the mayor, as aforesaid, are an infringe-
ment on the rights of the relator, and are an attempt
to exercise authority that the mayor does not possess,
and are an encroachment upon the authority and ju-
risdiction of the courts of this State." This court,
after reviewing numerous authorities applicable to the
subject in hand, speaking through Judge SHERWOOD,
said: "In this instance, not only was the power of
amotion of an offending officer for reasonable and just
cause one of the common-law incidents and resultants
of the incorporation of the city, but it was specifically
conferred by the charter, and delegated to the mayor
and enforced by ordinance. It is true that neither
charter nor ordinance makes any provision for the
*means* whereby the amotion of an appointed officer is
to be effected; but where a grant of power is given,
all the means necessary to effectuate the power pass
as incidents of the grant." The learned judge in an-
nouncing the final conclusions, in which Judges GANTT
and BURGESS of this division concurred, did so in this
language: "Guided by the foregoing authorities, we
hold that the charter of the city of St. Louis, in the
particular under discussion, is in harmony with the
Constitution and laws of this State; that the mayor,
being endued with power to remove the relator 'for
cause,' could do so on notice given, charges preferred
and full opportunity to be heard, and that the mayor
has all the power necessary to carry into effect the
authority granted him by the charter, and that the

charges contained in the record are sufficient, if relator be found guilty thereof, to authorize his removal."

Counsel for appellant in support of the insistence upon this proposition direct our attention to the cases of Albright v. Fisher, 164 Mo. 56; State ex rel. v. Stone, 120 Mo. 428; Magner v. St. Louis, 179 Mo. l. c. 502, and State ex rel. v. Walbridge, 69 Mo. App. l. c. 657-669. It is sufficient to say of those cases that we have carefully analyzed them and in our opinion they in no way conflict with the conclusions reached upon this proposition as heretofore indicated. While it is true that many of the cases in discussing the question as to the removal of an officer for cause, state that the cause justifying a removal is a judicial question to be determined from the facts, but by no means does it follow from this that the mayor in the exercise of the power conferred by the charter and ordinances of the city to hear complaints against persons occupying positions in other departments of the city government, and if the facts are sufficient, to order the removal of such officer, is violating the provisions of the Constitution to which our attention has been directed, simply because in the exercise of such powers he may be required to perform functions which are judicial in their nature, or quasi-judicial. The case of State ex rel. v. Walbridge, 69 Mo. App. 657, upon which relator chiefly relies in support of the point now under discussion, was one in which upon charges heard before Mayor Walbridge against the superintendent of the house of refuge, the official after such hearing was ordered removed, and by a similar proceeding to the one in the case at bar, the cause reached the St. Louis Court of Appeals. That court, after fully reviewing the case, overruled the motion to quash the judgment of the mayor and entered judgment in his favor.

In Fuller v. Attorney-General, 98 Mich. 96, it was insisted not only that a member of the board of con-

State ex rel. v. Wells.

trol was disqualified from hearing and .determining charges against an officer which he himself had preferred against the officer, but the point was also made that he was unauthorized to perform the judicial function of hearing such complaint. The court, in discussing that proposition, said: ''To the proposition that removing boards perform acts which are judicial in their nature, we readily assent. They must hear and determine, when the power is limited to removals for cause. So must boards of review, auditing boards, highway and drain officers, pardon boards, and in fact nearly every officer who has duties to perform; and it is also true that the action of all these is subject to review in courts of justice. None of them, however, belongs to the judicial department of government, nor can they be called judicial officers, though all performing acts in their nature judicial. Their acts are administrative.''

In the Walbridge case, 119 Mo. 383, this court directed attention to section 7 of article 14 of the Constitution, which provides that the General Assembly shall, in addition to other penalties, provide for the removal of the city and county officers, etc. It was then pointed out in that case that the charter provisions and ordinances in pursuance of it providing for a summary method of removing officers derelict in their duties, were simply in pursuance of the commands of that provision of the Constitution, and should be upheld upon that ground.

We deem it unnecessary to pursue this subject further. The right and power of the mayor to remove officers upon charges, after due notice of such charges and a hearing, has been fully recognized in State ex rel. v. Walbridge, 62 Mo. App. 162; State ex rel. v. Walbridge, 69 Mo. App. 657, and State ex rel. v. Walbridge, 119 Mo. 383.

## II.

It is earnestly insisted by learned counsel for appellant that the mayor in this case acted as prosecutor and judge on the trial of the relator in plain violation of the law of the land, and that his judgment was and is a nullity.

The charter provisions of the city of St. Louis, article 4, section 5; article 4, section 15; article 4, section 16, and article 4, section 47, and the ordinances adopted in pursuance of such charter provisions, manifestly, if they are to be held valid, confer the right and power upon the mayor to remove officers occupying positions in other departments of the city government. The substance of these charter provisions is to the effect that the mayor is the chief executive officer of the city, and it is expressly made his duty to see that the laws of the city and the ordinances of the city are respected and enforced. In our opinion, as is contended by counsel for respondent, this would certainly include all laws and ordinances relative to the proper performance of the duties of the commissioner of public buildings, who is one of the appointees of the mayor.

It is earnestly insisted that the mayor was disqualified from hearing complaints against the relator which had been preferred by the secretary to the mayor. With all due respect to the learned and esteemed counsel for appellant we are unable to give our assent to this insistence. As already stated, the charter provisions imposed the duty upon the mayor to see that the laws of the city and ordinances of the city are respected and enforced. In other words, it is made his duty to see that the officers appointed by him are not derelict in the discharge of their duties, and the mere fact that his secretary prefers the charges against one of the officers in one of the departments, or even if the mayor should make out the charges himself, it

by no means follows that he is prejudiced or biased or has any other interest in the proceeding than to ascertain whether or not the charges are true. The mayor has certain duties imposed upon him and he is entitled to the presumption that he will conscientiously and in good faith discharge those duties. It certainly would be a very violent presumption that the mayor of a great city in the investigation of charges against officials acted from spite or any other improper motive. The only presumption that can be indulged, in the absence of any showing to the contrary, is that he is acting in obedience to the commands of the organic law of the city of which he is the chief executive.

Mr. Works in his treatise on Jurisdiction, page 396, in discussing the proposition as to disqualification, thus states the rule, that in order to disqualify a judge, "some direct personal interest, that is, personal to the judge, and not such a general or public interest as affects all persons in the district or community contingently only and equally with him." The same author on page 396, says: "The bias or prejudice of the judge, or a desire on his part that one or the other parties shall succeed, is not sufficient to disqualify him." "Mere interest in the question involved, there being no interest in the subject-matter of the action, does not disqualify him." [P. 398 et seq.] "The rule of disqualification does not apply to officers not judicial, although their acts may call for the exercise of judgment and discretion." [Pp. 409-410.]

In State ex rel. Norton v. Lupton, 64 Mo. 415, the mayor of the city himself signed the charges against the officer involved; however, no point was raised as to his disqualification, the case being determined upon the question as to the definiteness of the charges.

In State ex rel. v. Slover, 113 Mo. 202, Judge Slover preferred charges against his own court stenographer, and thereafter removed him, and his ac-

tion in removing such official was sustained by this court.

In Mayor of Lexington v. Long, 31 Mo. 369, the mayor of the city of Lexington presided in a street opening proceeding in which he was personally interested, and the point was made that he was disqualified. It was ruled by this court in that case that no disqualification attached, and in announcing the final conclusion it was said by the court that the limitations upon the principle that no one should be a judge in his own case were determined by the statute providing when the statute should apply and that the statutes had not provided for the case in hand.

In the very recent case of State ex rel. Parker-Washington Co. v. St. Louis, 207 Mo. 354, the question of the disqualification of a member of the Board of Health to sit in the hearing of the questions as to whether certain works constituted a nuisance, was sharply presented to this court. It was insisted in that case that the Health Commissioner was disqualified from sitting as a member of the board on the ground that before the board had met to consider the case, that is to say, in the written notice issued by the Health Commissioner to the relator calling upon relator to answer the charge, he had stated in his opinion the works as operated constituted a nuisance and were detrimental to the public health and for that reason it was insisted that he was disqualified from sitting in such hearing. It was also contended in that case that in proceedings of this kind the party to be affected is entitled to the same degree of impartiality in the members of the board as the law prescribes for a juror who is to try a cause in a court of justice. In responding to this contention, this court said: "We do not agree to that proposition. Proceedings of this kind from necessity must be conducted with less strictness than the trial of a law suit in a court of justice. Such

proceedings must be conducted honestly and fairly and with good common sense, but not necessarily with judicial strictness. If a juror has formed or expressed an opinion in a cause to be tried, we put him aside and call another, but if we put the Health Commissioner aside, whom will we call in his place? And if several other members of the board have seen the object complained of and have formed the opinion that it was a nuisance and said so, how is the city to proceed to condemn it? ... . If complaint is made, and instead of not issuing the notice at once he (the Health Commissioner) should deem it more prudent to visit the premises himself and see if there is reasonable ground for the complaint, it would be within the line of his duty to do so, and if, after inspection, he was satisfied that the thing was a nuisance, it would not be improper for him to so inform the proprietors. . . . The law, in express terms, authorizes the Health Commissioner 'to declare' the nuisance, but requires his condemnation to be approved by the Board of Health before it is put into execution.'' And in further discussing the proposition which confronted the court in that case, it was said: ''It is the duty of the Health Commissioner, when a matter injurious to public health is brought to his notice or comes under his observation, to declare it a nuisance by force of his own official judgment and give notice to the offending parties to appear before the board and show cause why the offense should not be abated, and he does not by discharging that duty disqualify himself from the performance of other duties imposed by law in furtherance of the same subject.''

In our opinion the mayor was not disqualified from considering the charges preferred against the relator in the case at bar. In reaching this conclusion we are not unmindful of the cases to which our attention has been directed by counsel for appellant. A

careful analysis of those cases will demonstrate that they in no way conflict with the conclusions reached upon this proposition. In Kansas City v. Knotts, 78 Mo. 356, the judge was a party defendant legally served with process, and the case of Drainage and Levee Dist. v. Jamison, 176 Mo. 557, clearly shows that one of the commissioners was interested pecuniarily in the result of the proceeding concerning the drainage district, for the reason that his wife owned overflow land which was by the petition embraced within the drainage district. Hence, it is manifest that these cases are not out of harmony with the rules heretofore suggested from that reached in the case at bar.

III.

This brings us to the final contention urged by appellant, that is, that the provisions of the charter of St. Louis under which the mayor removed relator from office, are not in harmony with the Constitution and laws of the State, furthermore were repealed by the Act of April 23, 1877.

As to the first subdivision of this proposition, that the charter provisions conferring the right and power upon the mayor to remove officers are not in harmony with the Constitution and laws of this State, it is sufficient to say that that question was fully treated herein in disposing of the first proposition in this cause. What was there said in the discussion of the charter provisions and the Constitution of this State is equally applicable to the first subdivision of this proposition.

Recurring to the second subdivision of the third proposition, that is, that the charter provisions conferring power upon the mayor to remove officers upon charges and after due notice, were repealed by the Act of 1877, we find that the sections upon which relator relies were carried into the revision of 1899 as sections 8853 to 8856, inclusive. These sections pro-

vide a method for removal of public officers generally, both State and municipal, and it is insisted by appellant that the charter provisions providing for a trial before the mayor of an officer of St. Louis, for neglect of official duty, are not in harmony with this act, which makes a general provision for a trial of a delinquent city officer. This proposition was in judgment before this court in Manker v. Faulhaber, 94 Mo. 430. The charter provision of the city of Sedalia conferred power upon the mayor, with the consent of the board of aldermen, to remove from office, etc. The proceeding in that case was for the recovery of damages against the mayor and others for maliciously removing the plaintiff from the office of city collector. The defendants, the mayor and others, justified their action under the provisions of the charter as heretofore indicated. Upon the trial the court refused to permit that section of the charter to be read in evidence and instructed the jury that, under the Constitution and laws of Missouri, as they existed in 1878, the mayor and board of aldermen of the city of Sedalia had no legal right or authority to remove the plaintiff from the office of city collector. It was expressly held in that case that this action of the trial court was erroneous, and that the provisions of the charter of Sedalia were not affected by the act of 1877, and this court in the Walbridge case, 119 Mo. 383, unqualifiedly approved the ruling in the case in the 94 Mo., and said, concerning that ruling, "that it could not be otherwise regarded than as decisive of this case; since the charter of St. Louis of 1876 is no more inconsistent with the general law of 1877 than was the charter of Sedalia on the point already quoted." And in the same Walbridge case, in discussing State ex rel. v. Slover, 113 Mo. 202, this court said that in the Slover case "it was distinctly ruled that section 8233, Revised Statutes 1889, providing that an official stenographer might be removed

without the intervention of a jury, for 'incompetency or any misconduct in office,' by the *judge* of the circuit court, on charges entered of record, and notice given, could stand as consistent with section 7127, aforesaid, and that the provisions of section 8233 might well be regarded as simply furnishing a *cumulative* remedy to that ordained in the former section, in relation to removals for failure to give personal attention to official duties.''

Manifestly the provisions of the Act of 1877 did not expressly repeal the charter provisions of the city of St. Louis conferring power of removal of officials upon the mayor, and applying the well-settled rules as to repeal by implication, it cannot be held that such charter provisions were repealed by the general law under the Act of 1877. ''A repeal by implication must be by necessary implication. It is not sufficient to establish that the subsequent law or laws cover some, or even all, of the cases provided for by it; for they may be merely affirmative, or cumulative, or auxiliary. But there must be a positive repugnancy between the provisions of the new law and those of the old; and even then the old law is repealed by implication only *pro tanto,* to the extent of the repugnancy.'' [Anderson's Law Dict., p. 879.]

It may be also added that this court in the Walbridge case, 119 Mo. 383, in no uncertain terms gave expression to its unqualified approval of the provisions of the charter of the city of St. Louis which conferred the right and power upon the mayor upon charges, after due notice and a fair and impartial hearing, if the facts warranted it, to order the removal of officers. In expressing such approval, this court said: ''Surely nothing could more conduce to the good government and welfare of the city than that it should annex 'other penalties' (than those enacted by the general laws of the State) for the punishment of its own officers, than

that incompetent or unworthy officers should be removed in a more summary way than that afforded by the method of procedure provided in section 7127 and its associate sections."

That the Act of 1877 to which our attention is directed, did not repeal expressly or by implication the charter provisions of the city of St. Louis conferring power upon the mayor to remove officials has long been settled by this court, and in our opinion correctly settled by the cases herein suggested; hence the ruling upon this proposition must be adverse to the appellant.

In the discussion of the legal propositions disclosed by the record in this cause we have ignored the evidence embraced in the record as taken before the mayor. It is well settled in this State, both by the Courts of Appeals and the Supreme Court, that the writ of *certiorari* brings up for review only the record proper and not the evidence. There is no provision of the statute by which it is provided that the evidence taken before the mayor in cases of this character may be preserved and made a part of the record, and being no part of the record it could not be reached by a writ of that character in the case at bar, nor has it any place in this proceeding. This conclusion is in perfect harmony with the express rulings of the Courts of Appeal in State ex rel. v. Walbridge, 62 Mo. App. 162; State ex rel. v. Walbridge, 69 Mo. App. 657, and with State ex rel. v. Baker, 170 Mo. 383.

Entertaining the views to which we have herein given expression, it results in the conclusion that the judgment of the trial court should be affirmed, and it is so ordered.

All concur.