**Ex parte William Clyde HOUSTON, Jr., Petitioner,**

v.

**Wm. J. HENNESSEY, Jr., Respondent.**

**No. 36657.**

Missouri Court of Appeals, St. Louis District, Division Two.

Nov. 10, 1975.

Arthur M. Schwartz, Denver, Colo., Tierney, Mushkin & McGuire, Thomas W. Tierney, Kansas City, for petitioner.

Andrew J. Minardi, Assoc. County Counselor, Frank J. Kaveney, Clayton, for respondent.

STEWART, Judge.

This is a proceeding in habeas corpus. Petitioner was found guilty of criminal contempt of the Circuit Court of St. Louis County by violating a temporary injunction of that court. The court sentenced petitioner to confinement in the county jail for one year and fined him $2500. For the reasons hereafter set out our writ heretofore issued is quashed.

A proceeding entitled *Gene McNary v. William Clyde Houston, Dar's Inc. d/b/a Spanish Lake Cinema et al.,* was commenced in the Circuit Court of St. Louis County. The petition in that action alleged that petitioners and others were displaying a movie entitled "Deep Throat" which was obscene and in violation of § 563.280 [1] and prayed injunctive relief in accordance with § 563.285.

After an adversary hearing the court found the film to be obscene and in violation of § 563.280 and issued a temporary injunction enjoining petitioner and others "from . . . exhibiting . . . showing or displaying to the public . . the film 'Deep Throat', as viewed by the court, and any and all copies and duplicate originals thereof, and any and all other films entitled, 'Deep Throat', that publish and display substantially the same characters, scenes and dialogue contained in the film 'Deep Throat', as viewed by the court in this cause, and that lie within the . . definition of obscenity as set forth in *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), . . . ."

Neither petitioner nor the other persons enjoined sought relief from the temporary injunction. They filed no motion to dissolve the injunction and did not seek to have it modified or clarified.

On November 8, 1974, some 50 days after the temporary injunction had been issued, a motion picture entitled "Deep Throat" was exhibited at the Spanish Lake Cinema under the management of petitioner. The following day contempt proceedings were initiated by the plaintiff in the injunction proceeding. An attachment and citation for contempt was issued ordering petitioner and others to show cause why they should not be adjudged in contempt for violation of the temporary injunction.

An evidentiary hearing on the show cause order was had which included a viewing of the film. At the conclusion of the hearing the court found beyond a reasonable doubt that petitioner had knowingly displayed a film entitled "Deep Throat" which contained substantially the same characters, scenes and dialogues contained in the film "Deep Throat" which was the subject of the temporary injunction. The court adjudged petitioner guilty of criminal contempt and placed him in the custody of respondent under a commitment order.

■ Upon application, this court issued a Writ of Habeas Corpus and admitted petitioner to bail. Respondent made a verified return to the writ in which he alleged that he held petitioner pursuant to the Commitment Order which followed the Judgment and Order entered by the court. Copies of the latter two documents were incorporated into the return. Petitioner's answer to the return was not under the oath of the petitioner as required by Rule 91.28, thus the allegations of the return must be taken as true. *Gugenhine v. Gerk,* 326 Mo. 333, 31 S.W.2d 1, 2 (banc 1930). We must accept as true the fact that the film "Deep Throat" which is the subject of this action is obscene within the definition of *Miller v. California, supra.* The recent opinion of the Supreme Court in *McNary v. Carlton, et al.,* 527 S.W.2d 343 (Mo.1975), is not apposite here.

Petitioner's only direct attack upon the Judgment and Order of the court finding him guilty of contempt is that the court erred in overruling petitioner's motion to

[1]. All statutory references are to RSMo 1969, V.A.M.S. and V.A.M.R., unless otherwise indicated.

disqualify the judge. The other contentions of petitioner are directed only at the temporary injunction. With respect to these contentions his "Points Relied On" do not fully comply with Rule 84.04(d). From his argument it seems that he assails that part of the injunction which enjoins the display of all other films which are "substantially the same" as the "film Deep Throat as viewed by the court", as "unconstitutionally vague", "overbroad on its face" and "an unconstitutional prior restraint of protected speech". Petitioner focuses primarily upon the term "substantially the same". The factual issue of whether the film shown on November 8 was substantially the same as that which was first viewed by the court is not before us for determination. That the two films were substantially the same is conceded by the pleading in this proceeding.

## I

 We shall first discuss petitioner's contention that the court should have sustained petitioner's Motion to Disqualify Judge. The motion sought a change of judge pursuant to Civil Rule 51.05 and Criminal Rule 30.12. Constitutional courts of common-law jurisdiction have inherent power to punish for contempt. The proceeding is sui generis. One court may not try a contempt against another court. Although contempts are labeled civil and criminal they are not civil actions nor prosecutions for offenses in the ordinary meaning of those terms. It has been said that no change of venue will lie. *Osborne v. Purdome*, 244 S.W.2d 1005 (Mo. banc 1951). A reading of the authorities indicates that in contempt proceedings, the term "change of venue" has not been used in the technical sense but also includes the term "disqualification of the judge".[2] It is apparent that neither Rule 51.05 which provides for change of judge in civil cases, nor 30.12 providing for change of judge in criminal

cases, is applicable here. Rule 35.01 which governs proceedings in criminal contempt provides for disqualification of judges only in those instances where the contempt involves disrespect to or criticism of a judge. In such instances the judge may not preside except with the consent of the defendant. This proceeding does not involve disrespect to or criticism of the judge.

 "The right to a change of venue, including objections to the judge, is a statutory privilege . . ." *Erhart v. Todd*, 325 S.W.2d 750, 752[1] (Mo.1959). Absent a specific rule or statute, litigants in a contempt proceeding have no right to disqualify a judge. Petitioner cites no rule or statute granting him the privilege.

There is language in some of the cases to the effect that where by the nature or facts of the case the judge cannot give the accused an impartial trial, that judge should not sit but should call for another judge.[3] Dictum in those cases states that failure to grant a change would deprive the accused of due process. The authority given for the dictum is *State ex rel. McAllister v. Slate*, 278 Mo. 570, 214 S.W. 85 (Mo.banc 1919). The question in *McAllister* was the right of the State to disqualify a judge in a criminal case. It was not a contempt proceeding. This case is governed by the general rule that, absent a special rule or statute, a petitioner in a contempt proceeding has no right to disqualify the judge.

 We feel that judges are to be accorded the same presumption granted all public officers that they will faithfully carry out the duties of their offices. *State ex rel. Heimburger v. Wells*, 210 Mo. 601, 109 S.W. 758, 761 (1908). We are confident that judges will not undertake to preside in matters in which they will have a personal interest or where they can not be impartial.

---

**2.** *Osborne v. Purdome, supra; State v. Norman,* 193 S.W.2d 391, (Mo.App.1946); 17 C.J.S. Contempt Sec. 66 p. 168.

**3.** *Osborne v. Purdome, supra; State ex rel. Wendt v. Journey,* 492 S.W.2d 861, 864 (Mo. App.1973).

Neither the nature of this case nor the facts distinguish it from any other case when the contemnor has violated an order of the court so as to indicate that the court could not give the accused an impartial trial. The accused on the day before the proceedings began assured the court he would be ready for trial.[4] The motion seeking to disqualify the court came only after the case was to have commenced; it contains no allegation as to when the alleged prejudice became known to the petitioner. The court granted a request for a jury trial. Subsequently, although petitioner announced that he would stand upon his motion to disqualify the judge, he asked the judge to try the case without a jury. In personally requesting the court to try the case petitioner stated, "I am not trying to imply that I am doubtful of getting a fair [sic] trial from your Honor than from a Jury." Under the circumstances in this case the court did not improperly deny the petitioner's request to disqualify the judge.

## II

The contentions of petitioner that the temporary injunction was unconstitutionally vague, overbroad and an unconstitutional prior restraint of protected speech are almost identical with those of petitioners in *Walker et al. v. City of Birmingham*, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967). In *Walker* the State trial court had enjoined petitioners from engaging in mass sit-ins and kneel-ins and in mass parades without a permit in violation of a city ordinance. The petitioners did not seek direct relief from the temporary injunction. After being cited for contempt petitioners "sought to attack the constitutionality of the injunction on the ground that it was vague and overbroad, and restrained free speech." The court expressed the opinion that the breadth and vagueness of the in-

junction and the underlying ordinance would be subject to substantial constitutional question. The court held, however, that the trial court that issued the injunction, as a court of equity, had jurisdiction over the petitioners and over the subject matter of the controversy; and that an order issued upon pleadings properly invoking its jurisdiction must be obeyed until it is dissolved or modified by proceedings directly attacking the injunction.

The general rule is best stated in *Howat v. State of Kansas*, 258 U.S. 181, at 189, 42 S.Ct. 277 at 280, 66 L.Ed. 550, at 559 (1922):

"An injunction duly issuing out of a court of general jurisdiction with equity powers, upon pleadings properly invoking its action, and served upon persons made parties therein and within the jurisdiction, must be obeyed by them however erroneous the action of the court may be, even if the error be in the assumption of the validity of a seeming but void law going to the merits of the case. It is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished."

*Walker* and *Howat* have been cited with approval by this court in *Mechanic v. Gruensfelder*, 461 S.W.2d 298 (Mo.App.1970). In the latter case petitioners sought to raise the question of the vagueness of the injunction for the first time in a Habeas Corpus proceeding, after they had been found guilty of contempt. The court held that if petitioners were of the opinion that portions of the order were too vague the way to attack those portions was through the

---

4. There is an indication that counsel of record expected petitioner's counsel from Colorado to be present at 2:00 on the day which petitioner requested the case set for trial. It appears from colloquy between

court and counsel that the latter attorney was in court but had to return to Colorado because of a death in the family. He, however, did not enter his appearance and made no formal written request for a continuance.

judicial process, not through willful disobedience of the injunction.

■ The principal purpose of criminal contempt is to protect the authority of the court's decrees; it is aimed at the intentional defiance of its orders. It is intended to protect the judicial system and not to aid litigants. *Mechanic v. Gruensfelder, supra.* There seems to be a growing tendency to open defiance of the orders of our courts. In instances of open disobedience of an order, where the litigants do not initiate proceedings, the court should do so. It is not within the province of litigants to forgive a criminal contempt of the court.

■ The Circuit Court of St. Louis County acting as a court of equity had jurisdiction over the person of petitioner; jurisdiction to issue a temporary injunction; its jurisdiction was duly invoked by the pleadings in the case; the petitioner had knowledge of the temporary injunction; approximately 50 days elapsed without an attack being made upon the temporary injunction by petitioner before he knowingly displayed a film entitled "Deep Throat" which was substantially the same film which was the subject of the temporary injunction. The Judgment and Commitment Order were properly entered. Our Writ of Habeas Corpus heretofore issued is quashed and petitioner is remanded to the custody of respondent.

SMITH, C. J., and KELLY, J., concur.