Leon **REEVES** and Martha
Carter, Petitioners,

v.

Edward **MORELAND**, Acting Director
Department of Welfare, Respondent.

No. 39911.

Missouri Court of Appeals,
Eastern District, Division One.

Jan. 16, 1979.

Francis L. Ruppert, Ruppert & Schlueter, Clayton, Bernard Edelman, Jerry J. Murphy, Joseph A. Fenlow, Jr., St. Louis, for petitioners.

Byron A. Roche, Special Prosecutor, Bridgeton, amicus curiae.

Burton Halpern, Bridgeton, Thomas W. Wehrle, St. Louis County Counselor, Andrew J. Minardi, Associate County Counselor, Clayton, for respondent.

SNYDER, Presiding Judge.

In this habeas corpus proceeding, petitioners Leon Reeves and Martha Carter contest their convictions for indirect criminal contempt. St. Louis County Circuit Judge Robert Lee Campbell found petitioners willfully and deliberately violated a valid restraining order issued by him on June 6, 1977.[1] Both petitioners were sentenced

---

1. The temporary restraining order of June 6, 1977 ordered the named defendants and all others to desist and refrain from:

1. Picketing the property occupied by Hussmann Refrigerator Company . . . or in any manner aiding, assisting or abetting therein, at any time two (2) persons are picketing at or near any entrance to said property, or at any time blocking or attempting to block in any manner any of the driveways to said Hussmann Refrigerator Company's property or from blocking or attempting to block in any manner, egress or ingress to said property.

2. Seeking to coerce or intimidate by physical acts or words, plaintiff's employees, customers and persons making deliveries or pickups to or from said plaintiff entering or leaving said property in transacting business with Hussmann Refrigerator Company.

3. Damaging in any way property of Hussmann Refrigerator Company or property of any person lawfully present at or near Hussmann Refrigerator Company's said property.

4. Assembling, grouping, loitering, standing, congregating, convening, gathering, mustering, meeting, massing, thronging, crowding, rallying or collecting of any person or persons within one-hundred (100) yards of plaintiff's chain link metal fence which extends along the boundaries of plaintiff's property adjacent to Taussig Road, Enterprise Way

to twenty days imprisonment in the custody of the St. Louis County Department of Welfare.

The conduct for which petitioners were found to be in violation of the restraining order occurred in connection with a strike by members of the United Steel Workers of America, AFL–CIO, Local 13889, against Hussmann Refrigerator Co., Inc. Petitioners were Hussmann employees and members of Local 13889; Reeves was the elected Recording Secretary of the Local and Carter a rank-and-file member.

On the morning of August 1, 1977, 300 to 400 striking Hussmann Refrigerator employees gathered within 100 yards of Hussmann's chain-link fence in a demonstration against the company. Police officers from St. Louis County, Bridgeton and surrounding municipalities were called to the scene. The temporary restraining order and warnings that the demonstrators violating it would be arrested were read two or more times over a bullhorn or loud-speaker to the assembled crowd. Finally, an order to arrest the demonstrators was issued. Petitioners were among the approximately 100 persons arrested.[2]

Petitioner Reeves argues the evidence presented failed to establish beyond a reasonable doubt that he was guilty of criminal contempt. Petitioner Carter makes no challenge to the sufficiency of the evidence supporting her conviction, but argues she was denied a fair and impartial trial in violation of her due process rights because Judge Campbell had personal knowledge, prior to the presentation of evidence, that she had actual knowledge of the restraining order.

The contempt convictions are affirmed, the writs of habeas corpus previously issued are quashed and the petitioners remanded to the custody of respondent.

## LEON REEVES

Is there substantial evidence to support the finding, beyond a reasonable doubt,

that Leon Reeves violated the restraining order?

Judge Campbell found Reeves had violated the temporary restraining order by:

1. picketing the property at a time when two other persons were picketing at an entrance to the Hussmann property;

2. blocking egress and ingress by his presence in the crowd of 300 to 400 persons;

3. seeking to coerce or intimidate Hussmann employees from entering or leaving the plant by shouting, "Go home scabs";

4. assembling in a crowd of 300 to 400 people within 100 yards of Hussmann's chain-link fence; and

5. blocking egress and ingress by instructing pickets to keep walking and slow traffic.

Before discussing the evidence and the charges against Reeves, some of the principles applicable to appellate review of habeas corpus and criminal contempt proceedings should be set out.

First, the elements of criminal contempt that must be proved are actual knowledge of the restraining order and willful conduct in violation of its terms. *Ramsey v. Grayland,* 567 S.W.2d 682, 686 (Mo.App.1978); *Chemical Fireproofing Corp. v. Bronska,* 553 S.W.2d 710 (Mo.App. 1977). Although a criminal contempt proceeding is sui generis [*Osborne v. Purdome,* 244 S.W.2d 1005 (Mo. banc 1951) cert. denied, 343 U.S. 953, 72 S.Ct. 1046, 96 L.Ed. 1354 (1952)], the state has the burden of proving the elements of criminal contempt beyond a reasonable doubt. *Ramsey, supra,* 686.

Second:

In a habeas corpus proceeding involving a challenge to the sufficiency of the evidence, we do not review the record de novo, but must determine whether the

and St. Charles Rock Road, in the City of Bridgeton, St. Louis County, Missouri.

2. For a more complete account of the procedural history of the restraining order and the

events of the morning of August 1, 1977, see *Ramsey v. Grayland,* 567 S.W.2d 682 (Mo.App. 1978).

trial court's findings are supported by the evidence. *Ex parte Neal,* 507 S.W.2d 674 (Mo.App.1974); *Mechanic v. Gruensfelder,* 461 S.W.2d 298 (Mo.App.1970). In making this determination, we view the evidence in the light most favorable to the court's judgment, giving consideration to all favorable inferences which reasonably may be drawn from the evidence. All facts and inferences to the contrary are to be disregarded. *State v. Franco,* 544 S.W.2d 533 (Mo. banc 1976). It is not our function to weigh the evidence where it is in conflict or to resolve issues of credibility; rather, we look to see whether there was substantial evidentiary support for the court's findings. *State ex rel. Girard v. Percich, supra* [557 S.W.2d 25 (Mo.App.1977)]. Criminal contempt may be proved by circumstantial evidence so long as the facts are consistent with one another and with the hypothesis of guilt, and are inconsistent with a reasonable hypothesis of innocence. *Mechanic v. Gruensfelder, supra; Ex Parte Miles,* 406 S.W.2d 107 (Mo.App.1966).

*Ramsey, supra,* 690.

Petitioner Reeves, as Recording Secretary of Local 13889, was named as a defendant in the restraining order issued by Judge Campbell. As Reeves concedes in his brief, "there is no question [but] that he had actual knowledge of the existence of the temporary restraining order." Therefore, we proceed to the second element of criminal contempt—willful conduct in violation of the restraining order.

■ From midnight until 8:00 a. m. on August 1, 1977, Reeves served as one of three union "picket captains." Their duties included keeping picket attendance records, being present for picket shift changes, visiting pickets on the picket line at the Hussmann gates and bringing them refreshments. Although pickets served four hour shifts, Reeves and the other picket captains normally served eight hour shifts.

About 6:30 a. m. on August 1, Reeves received a call at union strike headquarters informing him that demonstrators were assembling across the street from the Huss-

mann plant. (Reeves denied having any prior knowledge that a demonstration had been planned.) In response to the call he drove to the Hussmann plant but could not reach it because traffic had been stopped by the demonstration. He parked his car on the south side of St. Charles Rock Road, approximately 500 feet from the intersection of Taussig Road and St. Charles Rock Road, and walked toward Hussmann Gate No. 1, the scene of the demonstration. When he tried to cross over Taussig Road to Gate No. 1, he was stopped by police officers and told to stay on the west side of Taussig. He did so, and was arrested shortly thereafter while he was standing directly across from Gate No. 1 in the main body of demonstrators. The evidence presented at trial clearly established that Reeves: (1) picketed the property at a time when two other persons were picketing; (2) blocked egress and ingress by his presence in the crowd; and (3) assembled in a crowd of 300 to 400 demonstrators within 100 yards of Hussmann's chain-link fence.

It is unnecessary to consider all of the specifications found as to Reeves. Since the purpose of the writ of habeas corpus is to test the legality of the restraint, " '[i]t follows that if the determination . . . is supported as to even one of the several specifications contained in the judgment . . . then that petitioner is not illegally restrained . . . .' " *Ramsey, supra,* 687, quoting *Curtis v. Tozer,* 374 S.W.2d 557, 581 (Mo.App.1964). Substantial evidence supported the finding, beyond a reasonable doubt, that Reeves violated the restraining order as stated in specifications (1), (2) and (4) of the judgment.

The real issue, however, is whether Reeves possessed the criminal intent necessary to support a conviction on these specifications. This court has recognized in other contempt cases that the element of criminal intent "is traditionally the most difficult to establish" [*State ex rel. Girard v. Percich,* 557 S.W.2d 25, 36 (Mo.App.1977)] and may amount to "a nearly impossible burden on the prosecution." *Ramsey, supra,* 691. Because "[d]irect evidence of

criminal intent is rarely obtainable" it must more frequently "be inferred from the evidence of defendants' conduct." *Ramsey, supra,* 691.

Further complicating the issue, as the court recognized in *Chemical Fireproofing Corp., supra,* 717[15], "It is not clear whether the intent required is the intent to do the specific act which is prohibited by the court or the intent to defy the court." The court there finally decided "the requisite intent for a criminal conviction is somewhere in between—an intent to do the prohibited act not only with the knowledge that it will harm the other party but also with a careless and imprudent disregard for the power and authority of the court which buttresses the prohibition."

■ Reeves had actual knowledge of the temporary restraining order when he joined the crowd of strikers on the west side of Taussig Road within 100 yards of Hussmann's chain-link fence. Although he was a union officer, Reeves did nothing to persuade the crowd to disperse and comply with the court order. Instead, and in spite of warnings by the police to the demonstrators to disperse or face arrest, Reeves remained in the crowd, blocked egress and ingress and picketed while two lawful pickets were present. Reeves would have this court view his action in a vacuum, without regard to the events of the morning of August 1, and the actions of the other demonstrators. The trial court could reasonably infer from Reeves' conduct and the attending circumstances that Reeves engaged in contemptuous activity in knowing and willful violation of the court's restraining order.

■ Reeves raises the argument that his status as a picket captain somehow negates the element of criminal intent because he only meant to perform his duties and "talk to the pickets at Gate No. 1." Again, this argument wholly ignores the events of the morning of August 1, 1977. Further, while this motivation may have amounted to a legitimate reason for Reeves' initial presence, once it became obvious that he could not accomplish this purpose, it ceased to

serve as a valid excuse. When Reeves' purpose was frustrated he had the choice of leaving or staying. He chose to stay and joined the crowd of demonstrators. Whatever Reeves' initial intentions may have been, there is no doubt that at the time of his arrest he knew his conduct violated the restraining order and chose to remain on the scene in "careless and imprudent disregard for the power and authority of the court . . . ." *Chemical Fireproofing Corp., supra,* 717.

Because the court's finding as to these specifications is supported by substantial evidence beyond a reasonable doubt, Reeves' confinement is lawful. *Curtis, supra; Ramsey, supra.*

### MARTHA CARTER

■ At trial, counsel for petitioner Carter filed a motion to disqualify Judge Campbell from sitting to hear the contempt charges, alleging that: (1) Campbell's interest or prejudice would prevent a fair and impartial trial and (2) the judge had visited the Hussmann plant on two occasions prior to August 1, 1977 and was, by reason of those visits, prejudiced. The motion was denied.

Judge Campbell did visit the Hussmann plant on June 5 and 6, 1977. On the latter occasion he personally read the amended temporary restraining order to a crowd of strikers assembled across from the Hussmann plant. Near the end of petitioner's trial, counsel for petitioner, with the court's permission, questioned Judge Campbell as he sat on the bench. Judge Campbell acknowledged that he remembered Carter as one of the strikers present in the crowd when he read the temporary restraining order on June 6. He also admitted he could "very distinctly remember her because she came out of the crowd and relieved one of the pickets at the gate. And, we had a little dispute about the speed with which she crossed the entrance in front of cars." Counsel at this point renewed his motion to disqualify. Judge Campbell again denied the motion.

Petitioner argues she was denied a fair and impartial trial in derogation of her due process rights because Judge Campbell had formed an opinion, based on his personal knowledge prior to the presentation of evidence, that Carter had actual knowledge of the restraining order. Since actual knowledge of the order is an element of the offense of criminal contempt which must be proved beyond a reasonable doubt by the state, it is argued that Judge Campbell's knowledge relieved the state of the burden of proving this element of the offense and rendered him incapable of impartially deciding the case on the evidence presented. These arguments are rejected.

Rule 35.01, which governs criminal contempt proceedings, does not provide for disqualification under these circumstances. The rule provides for disqualification only where the contempt involves disrespect or criticism of the judge. Rule 35.01(b). This indirect criminal contempt proceeding does not involve disrespect or criticism of Judge Campbell.

■ No change of venue lies in criminal contempt. *Osborne, supra.* In contempt proceedings, change of venue includes the term " 'disqualification of the judge.' " *Houston v. Hennessey,* 534 S.W.2d 52, 55 (Mo.App.1975). "[7] 'The right to a change of venue, including objections to the judge, is a statutory privilege . . . .' " *Houston, supra,* 55, quoting *Erhart v. Todd,* 325 S.W.2d 750, 752[1] (Mo. 1959). "Absent a specific rule or statute, litigants in a contempt proceeding have no right to disqualify a judge." *Houston, supra,* 55. As in *Houston,* petitioner has cited no rule or statute granting her the privilege of disqualification.

The court in *Houston, supra,* noted at page 55, there is language in some of the cases "to the effect that where by the nature [of] facts of the case the judge cannot give the accused an impartial trial, that judge should not sit but should call for another judge [citing cases in footnote 3]" and "that failure to grant a change would deprive the accused of due process." However, the court concluded this latter state-

ment was dictum based on a misapplication of the law of criminal cases. The court specifically rejected the application of the criminal rule for disqualification to a contempt proceeding. Therefore, Rule 35.01(b) applies and Judge Campbell properly denied the motions to disqualify. *Houston, supra.*

If petitioner's argument were accepted, a judge could not sit in any contempt proceeding involving a contemnor who was named as a defendant in the restraining order because the judge would have personal knowledge that the contemnor had actual knowledge of the order. It would not have been proper, under petitioner's theory, for Judge Campbell to hear the contempt charges against petitioner Reeves. Such a result is inconsistent with the principle that a contempt proceeding is ancillary to the action from which the contempt arose and that one court may not try contempt of another court. *Osborne, supra.* The court in *Ramsey, supra,* recognized, at page 688, that "the judge who issues a valid restraining order may be expected to have an interest in ensuring compliance with that order and, accordingly, will have some knowledge of the circumstances and activities which form the basis of later contempt prosecutions."

■ Most important, the state proved through the testimony of eyewitnesses to the events of the morning of August 1, 1977 that petitioner Carter was present in the crowd of demonstrators while the temporary restraining order and the warnings to disperse were read. Petitioner's presence when the restraining order was read is sufficient to establish actual knowledge, *Mechanic v. Gruensfelder,* 461 S.W.2d 298, 312 (Mo.App.1970). The prosecution met its burden and proved the element of actual knowledge of the restraining order by independent evidence. There was overwhelming evidence in the record to support the trial court's finding that Carter knew of the order and violated it by her conduct on the morning of August 1, 1977. State Trooper Julien and police officers Warner, Hencken, Kuykendall, Voisey, Bishop and Jamison all saw Carter within 100 yards of Hussmann's

chain-link fence. Officers Kuykendall and Reeder stated Carter was walking in a circle with the other demonstrators. Officers Reeder and Jamison specifically testified Carter was shouting, "Scabs go home!" through a bullhorn. Officers Hencken, Kuykendall and Bishop confirmed Carter had the bullhorn and was singing, chanting or encouraging the demonstrators through it. Any argument that Judge Campbell had to rely on his personal knowledge to support the finding or was punishing Carter for her conduct on June 6, must be rejected in light of the uncontroverted evidence presented by the prosecutor.

"[J]udges are expected to faithfully and judicially carry out the duties of their offices. *State ex rel. Heimburger v. Wells,* 210 Mo. 601, 109 S.W. 758, 761 (1908). Judges therefore are accorded the presumption that they will not undertake to preside in matters in which they will have a personal interest or where they cannot be impartial. *Houston v. Hennessey,* 534 S.W.2d 52, 55 (Mo.App.1975)." *Ramsey, supra,* 688. This court must presume Judge Campbell could render a decision based solely and exclusively on the evidence presented in the courtroom. Nothing in the judge's conduct during trial indicates he had prejudged the case of any of the contemnors or decided petitioner Carter's case prior to hearing all the evidence against her. In fact, Judge Campbell's impartiality is attested to by his not guilty finding in the cases of 12 of the 21 contemnors who were tried with Reeves and Carter. One example of his evenhandedness is shown by the absence from petitioners' appeal of any claim of error as to evidentiary rulings in a trial in which 27 witnesses testified, 15 for the prosecution and 12 for the defense. "In a case of indirect contempt, where the offense occurs outside the presence of the court, and arises 'out of no colloquy or encounter with the judge that would tend to arouse his passion or ill will.' *Osborne v. Purdome,* 244 S.W.2d 1005, 1013 (Mo. banc 1951) cert. den., 343 U.S. 953, 72 S.Ct. 1046, 96 L.Ed. 1354 (1952), evidence of bias must be the more compelling." *Ramsey, supra,* 688. Petitioner has failed to make a compelling showing of bias.

Therefore, petitioners Carter and Reeves are not illegally restrained. The writs as to both petitioners should be, and are, quashed and petitioners are remanded to the custody of respondent.

WEIER, C. J., and SMITH, J., concur.