STATE OF MISSOURI ex rel. ROBERT L. GREGORY, Respondent, v. A. F. BRODIE, GUS PEARSON and KANSAS CITY, a Municipal Corporation, Appellants.

Kansas City Court of Appeals, January 9, 1912.

1. MANDAMUS: Municipal Corporations: Charter: Salaries of Officers. The ordinance fixing the salary of the president of the upper house of the common council of Kansas City and other officer was not repealed by the adoption of the charter of 1908. There was nothing inconsistent between the charter and the ordinance, so far as it related to the office of president of the council; on the contrary, they are entirely consistent.

2. ————: ————: Ordinances: Repeal by Implication. Repeals by implication are not favored and a later statute will not repeal a former one by implication unless they are irreconcilably inconsistent, or it appears the Legislature intended the later acts to take the place of the former.

Appeal from Jackson Circuit Court.—*Hon. Thomas J. Seehorn*, Judge.

AFFIRMED.

*John G. Park* and *F. M. Hayward* for appellant.

The charter of 1908, section 5, article 2, is inconsistent with ordinance of Kansas City, No. 35479 and therefore repeals it. Smith v. State, 14 Mo. 147; State v. Roller, 77 Mo. 120; Gunn v. Jones, 115 Mo. App. 597; State v. Crane, 202 Mo. 54; United States v. Fisher, 109 U. S. 143; District of Columbia v. Hutton, 143 U. S. 18; Camden v. Varney, 63 N. J. L. 325.

*Reed, Yates, Mastin & Harvey* for respondent.

The charter of 1908, section 5, article 2, in so far as this relator is concerned, is not inconsistent with ordinance of Kansas City No. 35479 and is, therefore, not repealed, but still in force. Section 1, art. 18, p. 478, Charter of Kansas City 1908; 29 Cyc. 1427; Hall v. Gillham, 187 Mo. 405; State ex rel. v. Wilder, 197 Mo. 35; State ex rel. v. Wells, 210 Mo. 620.

BROADDUS, P. J.—Mandamus.  On December 19, 1910, the relator filed his petition in the circuit court of Jackson county asking for a writ of mandamus to compel the defendants to pay him his salary as president of the upper house of the common council of Kansas City.  The petition recites substantially that the relator at the general city election of the year 1908, was duly and legally elected president of the upper house of the common council of the city, and that he duly qualified as such president on the — day of April, 1908, and assumed such office and has ever since up to the present date acted as such municipal officer and discharged the duties of said office in all things; that the term for which he was elected pursuant to the charter of the city and its laws was for four years; that prior to the election of petitioner, a certain ordinance was enacted by the legislative bodies of the city having the authority to so do and was approved by the mayor, to-wit: on the 8th day of April, 1907, ordinance No. 35479, as follows: "An ordinance fixing and regulating the compensation of officers and employees in certain departments and offices of the city government: Be it ordained by the common council of Kansas City, Missouri: Section 1: That from and after the taking effect of this ordinance, the following officers and employees shall be employed at the expense of the city in the several departments and offices mentioned, and said officers

and employees shall hereafter receive for their services salaries calculated at the rate hereinafter specified, to be paid at the same time and in the same manner, to-wit:

| Position. | Salary per year. |
|---|---|
| Mayor's office — Mayor, | $5000.00 per year. |
| Members of the Upper House of the Common Council, fixed by the charter, except the president of the Upper House. | $5.00 per day for each day he may serve while in session as such alderman, not to exceed $300.00 per year, with the exception of the president of the Upper House, who shall receive $1800.00 per year, and is ex-officio president of the Board of Public Works.'' |

That said ordinance was in force at the time petitioner was elected to said office of president of the upper house of said common council; that by the terms of said ordinance and the charter then in force the petitioner was entitled to be paid a salary of $1800 per year; that the money for such payment has been lawfully and duly set apart; that it became the duty of the city auditor and city comptroller to issue and deliver to petitioner warrants drawn by the former and countersigned by the latter directing the payment to petitioner of such sum as might be due him from month to month, for and on account of his said salary as aforesaid; that such warrants were drawn from month to month by said officers and delivered to him until the first day of August, 1910, at which date the respondents, A. F. Brodie and Gus Pearson, city auditor and city comptroller, failed and refused to deliver any warrant for the salary of petitioner then due in the sum of $75, being the salary due him for the last half

of the month of July, 1910; that no warrant has been issued to petitioner for his salary since the 15th day of July, 1910; that warrants for his salary at the rate of $1800 per year as per said ordinance, for the last half of July and for the months of August, September, October and November for the year 1910, have been wrongfully and unlawfully withheld from petitioner.

He prays to have a writ of mandamus to compel respondents to issue and deliver to him city warrants for said months mentioned. An alternative writ of mandamus was issued to which respondents filed their return in which they admit petitioner's election and qualification to said office of president of the upper house of the common council of the city and the existence of ordinance 35479, fixing the salary of the office at $1800; but they allege that on the 4th day of August, 1908, a new charter was adopted by the people of the city which went into effect on the 4th day of the month following, which provided as follows: "Section 5. Compensation of Members. Each member of the common council shall receive for his services as councilman the sum of five dollars for each meeting of the council which he shall attend during his term of office; provided, however, that no extra compensation shall be allowed to such councilman for serving on any committee, agency or commission whatever, when appointed to perform such services by either or by both houses of the common council during his term of office, and in no case shall the aggregate sum paid to such councilman for services above enumerated exceed the sum of three hundred dollars per annum."

"And that by virtue of said charter of Kansas City adopted August 4, 1908, and more especially, by said section 5 of article 2 of such charter, ordinance No. 35479 was repealed, said ordinance being inconsistent with and in conflict with said charter of 1908;

that from September 4, 1908, to April 18, 1910, said relator was by said charter of 1908, section 1, article 10, president of public works, and under the belief that as such he was entitled to draw his salary as president of the Board of Public Works, he was permitted to draw his salary at the rate of $1800 a year, but on said 18th day of April, 1910, said relator ceased to be president and a member of said Board of Public Works, and was succeeded by William Buchholz who duly qualified as president of such board and has acted as such ever since said 18th day of April, 1910; that relator has not been entitled to such salary at the rate of $1800 per year since September 4, 1908, but only at the rate of $300 per year; that the change in the charter was called to the attention of said auditor and comptroller, respondents, shortly before the first of August, 1910, and that since said change was called to respondents' attention, about August 1, 1910, in accordance with such charter they have refused to issue warrants to relator at a higher rate than $300 a year, and said respondents say that no money for the payment of relator's salary at the rate of $1800 a year has been legally appropriated and that it is not the duty of said auditor and comptroller to issue and deliver warrants at such rate of $1800 a year to such relator.''

The petitioner filed a demurrer to respondents' return which was by the court sustained. The respondents refusing to further plead and electing to stand upon their return the court issued its peremptory writ requiring respondents to issue and deliver to petitioner proper warrants on the city treasury for his salary from the 15th day of July, 1910, until the 1st day of December, 1910, at the rate of $1800 per annum, being for the total sum of $675. The respondents appealed.

It is the contention of appellants that petitioner was only entitled to compensation at the rate of $300

per year. The only question is whether the charter provision of 1908, set up in the return to the writ operated as a repeal of ordinance No. 35479, under which petitioner claims compensation at the rate of $1800 per annum. Section 5, art. 2, of the charter of 1908, fixes the compensation of each member of the city council at $5 per day or in a sum not to exceed $300 annually; and that no extra compensation shall be allowed a member for serving on any committee, agency or commission whatever. Ordinance No. 35479 fixed the salary of each member of the council as in the subsequent charter provision in section 5 of article 2, but it went further and fixed the salary of the mayor and the president of the upper house, who was also made ex-officio president of the Board of Public Works.

It will be perceived that the provision of section 5 does not by express terms repeal that part of ordinance No. 35479 relating to the salary of the president of the upper house of the common council. In fact it does not pretend to repeal any part of said ordinance, but is, so far as words are concerned, substantially a re-enactment of that part which applies to the salary of the members of the council. The salaries of the mayor and the president of the council are not mentioned. The ordinance did not fix the salary of the latter as that of a member of the city council, but made a separate provision for him as such officer as it did for the mayor. Looking at it in this light it does not appear that any part of said ordinance was repealed by the later charter provision, but was amended so as to prevent councilman from receiving compensation while serving on committees, etc. There is nothing inconsistent between the charter amendment and said ordinance so far as it relates to the office of president of the council, on the contrary, they are entirely consistent the one with the other.

The charter of Kansas City of 1889, section 6, article 2, provided that each member of the council should receive for his services $5 per day and not to exceed $300 per annum, and further provided he should not receive any compensation while serving on committees, etc. Though couched in somewhat different language, substantially it is the same in effect as the present provision in section 5, article 2, 1908. So that the latter is but a re-enactment of the former. The former did not assume to fix the pay of the president of the council, but provided his salary should be regulated by ordinance, thus treating him not merely as a member of the city council, but as an officer of the city with other and greater duties to perform. In point of dignity and power he stood next to the mayor.

Section 1, art. 10, chapter of 1908, provides that: "All ordinances, regulations and resolutions in force at the time this charter takes effect, and not inconsistent with the provisions thereof, shall remain and be in force until altered, modified or repealed by the common council." As both the charter provision of section 5, article 2, and the ordinance in question are consistent one with the other the charter provision quoted in plain language continues them in force until repealed. It seems clear that as the charter of 1908, which we have quoted, made no provision for the salary of the president of the council nor that of mayor, their salaries were regulated by the ordinance in question until repealed and a new ordinance enacted for that purpose. The charter of 1908 did not fix the salaries of the city officers but provided in article 4, section 29 thereof that the common council should at least thirty days before each city election by ordinance fix the salaries of all officers for the ensuing official term. Therefore, as the charter did not repeal the ordinances fixing the salaries of its then existing officers but provided that they should continue in office until their terms expired, it was a necessary sequence

that they were entitled to their salaries under such ordinance, no provision having been made by subsequent ordinances under the new charter.

It is true that a statute is impliedly repealed by a subsequent one revising the whole subject-matter of the first. [State v.Crane, 202 Mo. 54.] We cannot see how this can effect the question before us as the whole subject-matter relating to the salaries of its officers was left open for future legislation by its common council, and until such council acted, the ordinances were continued in force and unrepealed. Repeals by implication are not favored and a later statute will not repeal a former one by implication unless they are irreconcilably inconsistent, or it appears that the Legislature intended the later acts to take the place of the former. And it is said that: "It is not sufficient to establish that the subsequent law or laws cover some, or even all, of the cases provided for by it, for they may be merely affirmative, or auxiliary." [State v. Wells, 210 Mo. 601.] This statement of the law is peculiarly applicable to the facts in this case, as we have shown that the charter provision is merely affirmative of the provisions of said ordinance No. 35479. The judgment was clearly right and it is therefore affirmed. All concur.