CASE 28—PETITION ORDINARY—OCTOBER 20.

# South v. The Commissioners of the Sinking Fund.

### APPEAL FROM FRANKLIN COURT OF COMMON PLEAS.

1. WHILE PROCEEDINGS FOR THE REMOVAL OF AN OFFICER FOR CAUSE belong properly to the judicial power of the State, unless its Constitution or laws provide otherwise, yet when the Legislature creates an office it may refer the power of removal to the Governor or other tribunal not judicial.

2. THE COMMISSIONERS OF THE SINKING FUND HAVE THE POWER TO REMOVE THE WARDEN OF THE PENITENTIARY WITHOUT TRIAL in their discretion, and their action is not subject to judicial investigation; and while the Legislature has reserved to itself revisory power over the action of the Commissioners in this matter, their order of removal takes effect at once, and does not operate merely as a suspension of the Warden pending the action of the Legislature. The removed Warden, therefore, has no right to retain possession of the property set apart by the Legislature for the use of the Warden and his family.

W. LINDSAY FOR APPELLANT.

Cites: Gen. Stats., p. 691; Page v. Hardin, 8 B. M., 656.

P. W. HARDIN, ATTORNEY-GENERAL, FOR APPELLEE.

Cites: Page v. Hardin, 8 B. M., 656, 675.

A. DUVALL OF COUNSEL ON SAME SIDE.

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

The appellant, South, was duly elected Warden of the Penitentiary for the term ending March 1, 1888. The Commissioners of the Sinking Fund on September 16, 1884, entered an order for his removal.

This action was brought against him on April 10, 1885, for the possession of the dwelling in which the Warden is required by the statute to reside; and the validity as well as the effect of the action of the Com-

missioners of the Sinking Fund is involved. The law provides:

"§ 1. The Commissioners of the Sinking Fund shall hereafter be *ex officio* directors of the Kentucky Penitentiary, and shall perform the duties hereinafter prescribed for them in this act.

"§ 2. That a Warden of the Penitentiary shall be elected by joint ballot of the two Houses of the General Assembly, who shall hold his office for the term of four years, commencing on the first day of March of the year of his election, subject to the provisions of this act: *Provided*, That the Warden elected by the present General Assembly shall qualify immediately after his election, and shall hold his office until March 1, 1884, also subject to the provisions of this act. The General Assembly next preceding the expiration of the term of office of any Warden so elected shall elect his successor. If a vacancy should occur at any time when the General Assembly is not in session, it shall be the duty of the said Commissioners to fill the same by the appointment of a suitable person to discharge the duties of the office until the next ensuing meeting of the General Assembly, and until the General Assembly, by a regular election, as above provided, has elected a person to fill the vacancy for the remainder of the term. The said Commissioners shall have power, in their discretion, to remove any Warden, and they shall communicate the fact, with the grounds upon which the removal was made, to the next succeeding General Assembly, within ten days after its organization. If the General Assembly fail or refuse to concur in the said removal within twenty days after the fact of re-

moval is communicated to it, then it shall be the duty of said Commissioners to reinstate said Warden." * *

The statute also provides that it shall be the duty of the Commissioners to appoint a Deputy Warden whenever they may deem it necessary ; also, "the Warden shall reside in the dwelling near the prison belonging to the State, and now occupied by the family of the late keeper, and shall have the same with its appurtenances free of rent ; " and that he shall execute a covenant to the Commonwealth providing, *inter alia*, that he "shall faithfully account for all the property in his hands or under his control belonging to the State when he ceases to be Warden, or is required to do so by said Commissioners."

The appellant contends, first, that the order of the Commissioners was merely interlocutory ; that it operated merely as a suspension of him as Warden, and not as a removal, from the time it was made until the Legislature should either fail or refuse within the time fixed by law to concur in it; that in the *interim* he was still Warden, entitled to the emoluments of the place, but without the power to exercise the functions of the office ; and second, if this were not so, that having been elected Warden, and having therefore a right to the office, the Commissioners had no such discretion under the law as authorized them to remove him without notice, the preferment of charges, and a trial ; and while a court should not interfere with the exercise of a discretion, yet, if illegally exercised, it will not assist in making it effective.

The office in question is not a constitutional one. It is the creature of the Legislature, and subject to its will.

Proceedings for the removal of an officer for cause belong properly to the judicial power of the State, unless its Constitution or laws provide otherwise. Where, however, the Legislature creates an office, it undoubtedly may refer the power of removal to the Governor, or other tribunal not judicial. (Page v. Hardin, 8 B. M., 648.)

If the office of Warden is under the law held subject to the judgment of the Commissioners of the Sinking Fund, then he can not complain, although his removal may, in fact, be without proper cause. Whether they have this power he may, as the appellant is now doing, ask a judicial determination.

A right dependent upon the mere judgment of another or a discretionary power, can not exist except by its consent, and must end at its will.

In this instance the law makes no provision for an investigation. There is no intimation that notice is to be given to the Warden or that charges shall be preferred, and he be heard in defense. No such inference can be drawn from any thing contained in the statute. The fact that it requires the Commissioners to report their action with the grounds therefor to the next General Assembly does not so imply. This merely affords the Legislature an opportunity to revise the action of its agent if in its opinion the discretion it has given has not been properly exercised. It is a power which it has reserved to itself. A case might arise where the public welfare would require immediate action. If notice, the preferment of charges and a trial were required, the matter might be protracted indefinitely and the public interest jeopardized.

It seems to us, therefore, that a reason was presented to the legislative mind for not requiring it, and that neither the language or the spirit of the law admit of such an interpretation.

It provides that the Warden shall "*hold his office* \* \* *subject to the provisions of this act;*" that "the said Commissioners shall have power in their discretion *to remove* any Warden," and "if the General Assembly fail or refuse to concur in the said *removal* within twenty days after the fact of *removal* is communicated to it, then it shall be the duty of said Commissioners to *reinstate* said Warden." The language must be given its ordinary meaning. It is plain. Webster says that the word "remove" means "to move away from the position occupied; to displace, as to remove a building;" and that "reinstate" means "to restore to a state from which one has been removed."

The Legislature evidently intended to give the Commissioners of the Sinking Fund broad powers. They doubtless believed that the welfare of the State required it. They recognized the fact that cases might arise where summary and immediate action would be highly necessary; they therefore gave to the Commissioners the power to *remove* the Warden in their discretion, but to avoid a possible injury to the State or to the individual, they reserved to themselves a revisory power.

As the Commissioners had the power of removal without trial, in their discretion, their action is not subject to judicial investigation; and as it for the time being removed, and not merely suspended, the

Warden in exercising the functions of the office, he had no right to retain possession of the property.

Judgment affirmed.