## Holliday v. William J. Fields, Governor of Kentucky.

(Decided February 20, 1925.)

### Motion for Writ of Prohibition.

1. Constitutional Law—Statute Empowering Governor to Remove Peace Officer After Hearing Held Not to Vest Judicial Powers in Governor in Violation of Constitution.—Acts 1924, c. 49, sections

1-5, enacted pursuant to Constitution, section 227, as amended in 1919, empowering Governor to remove peace officer after a hearing on written charges, and providing for preservation of evidence and finding, and for appeal from Governor's finding to Court of Appeals, held not to vest Governor with judical functions in violation of Constitution, section 135, removal of officer being an administrative and executive and not a judicial function.

2.  Prohibition—Action of Governor in Proceedings for Removal of Peace Officer Not Subject to Control by Court of Appeals in Original Proceeding for Writ of Prohibition.—The Court of Appeals cannot control action of Governor in proceedings for removal of peace officer, under Acts 1924, c. 49, in original proceeding for writ of prohibition, under Constitution, section 110, since the Governor in such proceeding exercises an executive or administrative and not a judicial function.

MOORE & MOORE and MORGAN, EVERSOLE & BOWLING for plaintiff.

FRANK E. DAUGHERTY, Attroney General, and OVERTON S. HOGAN and GARDNER K. BYERS, Assistant Attorneys General, for defendant.

OPINION OF THE COURT BY JUDGE DIETZMAN—Motion for a writ of prohibition denied.

In November, 1919, the people of Kentucky ratified an amendment to section 227 of our Constitution, so that the section as thus amended now reads (the added matter being that which follows the words "provided also"):

> "Judges' of the county court, justices of the peace, sheriffs, coroners, surveyors, jailers, assessors, county attorneys and constables shall be subject to indictment or prosecution for misfeasance or malfeasance in office, or wilful neglect in discharge of official duties, in such mode as may be prescribed by law; and upon conviction his office shall become vacant, but such officer shall have the right to appeal to the Court of Appeals. Provided, also, that the General Assembly may, in addition to the indictment or prosecution above provided, by general laws provide other manner, method or mode for the vacation of office or the removal from office of any sheriff, jailer, constable or peace officer, for neglect of duty, and may provide the method, manner, or mode of reinstatement of such officers."

By chapter 49 of the Acts of 1924, the legislature undertook to carry into effect this constitutional man-

date. This act is in five sections, the first of which provides that if a peace officer commit any of the acts therein denounced he shall be deemed guilty of neglect of official duty and shall be removed from office by the Governor. The proceedings for such removal are then set out, being in substance a trial before the Governor on written charges and a written finding by him of the facts developed, the evidence and such finding being preserved in the office of the Secretary of State. If the Governor finds such peace officer guilty, he must then remove him from office. Section 2 provides for an appeal from the Governor's finding to the Court of Appeals. Section 3 provides for the filling of vacancies caused by such removals. Section 4 provides for the disqualification of any officer thus removed to hold office for a certain period of time, and section 5 provides that removal under the act shall not prevent a prosecution before the criminal courts.

In this action the plaintiff, who is the sheriff of Perry county, and who had been cited under the foregoing statute for hearing by the defendant, the Governor of the Commonwealth, seeks a writ of prohibition, prohibiting the defendant from conducting said hearing on the grounds that the act is unconstitutional because it vests the Governor with judicial functions and thus makes him a court.

This is an original action in this court. Section 110 of the Constitution, which defines our jurisdiction, reads:

"The Court of Appeals shall have appellate jurisdiction only, which shall be coextensive with the state, under such restrictions and regulations not repugnant to this Constitution, as may from time to time be prescribed by law. Said court shall have power to issue such writs as may be necessary to give it a general control of inferior jurisdictions."

The plaintiff necessarily concedes the force of this section of our Constitution, but seeks to invoke our original jurisdiction on the theory, as stated, that the Governor in conducting the hearings provided for by this statute is attempting to act as a court, and therefore we have the power of control over him in an original action here by virtue of our authority to prohibit by such actions inferior courts from proceeding out of their jurisdiction. Weaver v. Toney, 107 Ky. 419, 54 S. W. 732.

On principle and on authority, we are clearly of the opinion that the power of removal from office of peace officers here in question is an administrative or executive function and not a judicial one, and the authority vested in the Governor to hear and determine the facts on which he is to base the exercise of his judgment and discretion is not judicial in the sense that it belongs exclusively to the courts.

In the case of Lynch v. Chase, 55 Kan. 367; 40 Pac. 666, the court had before it the power of the Governor of Kansas to remove for cause after due hearing the warden of the state penitentiary. It was urged there, as here, that the Governor could not exercise such power as to do so would permit him to exercise judicial functions. In answer to this contention the court said:

"Although the power to hear and determine is of a judicial nature, it is such a power as is frequently conferred on executive and administrative officers. It does not follow that, because the Governor or other functionary hears, considers, and decides, he performs a judicial function which belongs exclusively to a judicial officer or tribunal. . . . An officer is the mere agent of the public, who, by virtue of his election or appointment, acquires the right to exercise the functions of the office, and receive the prescribed compensation, until the end of his term, or until such time as there may be a resignation or forfeiture of and removal from the office in the manner provided by law. . . . The decided weight of authority is that, while the proceeding to remove from office for cause involves the examination of facts and the exercise of judgment and discretion by the executive officer, his action is not judicial in the sense that it belongs exclusively to the courts."

The Supreme Court of Illinois in the case of People, ex rel. Miller v. City of Chicago, 234 Ill. 416, 84 N. E. 1044, held that the removal of an officer is an administrative function and is not the exercise of a judicial power. To the same effect are State, ex rel. v. Superior, 90 Wis. 612, 64 N. W. 304; State, ex rel. v. Ansel, 76 S. C. 395, 57 S. E. 185; Re Guden, 171 N. Y. 529, 64 N. E. 451.

In the case of McMaster v. Herald, 56 Kan. 231, 42 Pac. 697, the right of the Governor to remove a commis-

sioner of election for misconduct after hearing was challenged.   The court said:

> "It is within the power of the legislature to provide a summary method of removing incompetent and unfaithful officers, and to that end it may confer authority upon executive officers; and that while the proceeding to remove from office for cause involves the examination of facts, and the exercise of judgment and discretion by the executive officer, his action is not judicial, in the sense that it belongs exclusively to the courts.   Many executive acts involve the exercise of judgment and discretion, including the power to hear and determine, and yet the acts and the power cannot be held to be judicial. In order to properly exercise an executive function, it is often a requisite preliminary to hear evidence to guide and direct the judgment of the executive as to the course to pursue, and it is not necessary, under our Constitution, to refer all such questions to the courts.   Even where the tenure of an office is declared by law, but power is given to remove for cause, or for official misconduct, all that seems necessary is due notice of the charge preferred, and a hearing thereon, with opportunity to the accused officer to be heard in his own defense."

To the same effect as the preceding authorities are State, ex rel. v. Bright, 224 Mo. 514, and State, ex rel. v. Wells, 210 Mo. 601, 109 S. W. 758.

In 12 Corpus Juris, page 899, we find the rule laid down, supported by abundant authority, that although a statute authorizing a removal of officers from office by the Governor or other executive officer for cause contemplates an investigation by such officer of the grounds of complaint and the formation of a judgment by him, it does not constitute an encroachment on the judiciary since the judgment and discretion to be exercised is of an executive and not of a judicial nature; and on page 809 we find:

> "Statutes conferring on officers, boards or commissions *quasi* judicial functions, as, for example, the necessity of inquiry into, and a finding of, facts incidental to the exercise of powers properly within the scope of legislative or executive authority, are not unconstitutional as encroachments on the judiciary."

The principles announced in these authorities have also been followed in this state. In the case of Gibbs v. Board of Aldermen of the City of Louisville, 99 Ky. 490, 36 S. W. 524, it was argued that the right of the Board of Aldermen of the City of Louisville to sit under the statute as a court of impeachment in the trial of a park commissioner violated those sections of our Constitution prohibiting the creation of any courts other than those provided for by that instrument. In holding this argument unsound, this court said that the power of removal is not strictly judicial and was not so regarded at common law, and the fact that the board of aldermen was called a court did not make the act unconstitutional, and that the board had jurisdiction to remove the official for misfeasance or malfeasance in office as well as for causes which unfitted him for the place. In the case of Willis v. Scott, 146 Ky. 547, 142 S. W. 1012, the court upheld the right of the State Board of Charities to try and discharge under the statute one of its employees, and said that in such trial the State Board of Charities did not act as a court within the meaning of section 135 of our Constitution. See also Board of Prison Commissioners v. DeMoss, 157 Ky. 289, 163 S. W. 183; Perkins v. Lucas, 197 Ky. 1, 246 S. W. 150. Pratt v. Breckinridge, 112 Ky. 1, 65 S. W. 136, 66 S. W. 405, is not in conflict with these views although, as pointed out in the Willis v. Scott case *supra,* there is much language in the Pratt case which seemingly has application. The power of removal from office, plainly an executive or administrative act, was not in question in the Pratt case, but only the question as to whether or not the election board could be constituted a board of contest to hear, and from aught that appears from the opinion, to finally determine a contested election. This power of hearing was not incidental or preliminary to the exercise of an act admittedly executive or administrative and hence the case is plainly distinguishable.

Although we rest our opinion in this case upon the proposition that the statute here in question does not constitute the Governor a court within the meaning of section 135 of the Constitution, we may call attention to the fact that under a constitutional provision similar to our present section 227, first quoted herein, the courts of Minnesota and Michigan have upheld statutes vesting the power of removal in the Governor after a hearing

conducted by him, although it be conceded, *arguendo,* that such statutes vest in him a judicial function.

In the case of State, ex rel. v. Peterson, 50 Minn. 239, 52 N. W. 655, the constitutionality of an act providing for the suspension and removal of county treasurers by the Governor for malfeasance or nonfeasance in office was in question, and the contention was made that the power of removal was judicial in its nature and could only be exercised by the courts. The court, speaking through Judge Mitchell, one of the great judges of this country, said:

> "Whether the power of removal from office for official misconduct is judicial in its nature is a question that has been much discussed, and upon which the courts in this country are not agreeing. Some courts hold the affirmative, seeming to proceed upon the ground that an incumbent has a property in his office, of which he cannot be deprived without the judgment of a court, after due notice and a hearing. This view is, of course, in accordance with the doctrine of the common law, which regarded an office as a hereditament. . . . Other authorities hold that the power of removal from office is administrative, and not judicial. These proceed upon the theory that, under our system of government, public office is a public trust, and not private property; that the right to exercise it is not based upon any contract or grant, but that the office is conferred upon the incumbent as a public agent, to be exercised for the benefit of the public. . . . In view of the express provisions of the Constitution of this state it is unnecessary to determine which of these doctrines is correct. It may be conceded, for the purposes of this case, that the power of removal from office is judicial, and that an incumbent cannot be removed except after notice and a hearing. Article 13 of the Constitution, after providing in section 1 for the removal of state officers and judges of the supreme and district courts by impeachment, then provides in section 2 that 'the legislature of the state may provide for the removal of inferior officers from office for malfeasance or nonfeasance in the performance of their duties.' The power thus conferred is plenary and confers authority upon the legislature to vest the power of removal, and the de-

termination of the question whether cause for removal exists, in any department of the government, or in any officer or official body, it may deem expedient. There is no requirement that this power shall be conferred only on the courts. Indeed, the very purpose of this provision was to provide a more summary and less cumbersome method of removing inferior officers than by impeachment or by indictment, according to the course of the common law, for malfeasance or nonfeasance in office. If, then, the power of removal vested in the Governor by this act be judicial, we have here the constitutional authority for it.''

The case of People, ex rel. Clay v. Stuart, 74 Mich. 411, 41 N. W. 1091, is in accord with the preceding case. There the Governor had after hearing removed a prosecuting attorney. He had done this pursuant to an act of the legislature vesting in him the power so to do. The legislature passed this act under article 12, section 7 of the Michigan Constitution, which reads:

''The legislature shall provide by law for the removal of any officer elected by a county, township or school district, in such manner and for such cause as to them shall seem just and proper.''

It was urged in that case that although the legislature had the right to designate the manner in which the cause for removal should be determined, the existence of such cause must be determined by some tribunal invested with power to make such determination by the Constitution which, being the exercise of a judicial function, could only be vested in the court. Although the Michigan jurisdiction takes the theory that a public office is a hereditament, yet the court disallowed this contention, saying:

''It will be noticed that the power conferred by this section of the Constitution is plenary. The legislature is to provide by law for the removal of county officers, etc., in such manner as to them shall seem just and proper. The power conferred is in its nature political, and has reference exclusively to the polity of government, which would be inherently defective if no remedy of a summary nature could be had to remove from office a person . . .

guilty of malversation in the administration of his office. Every person elected to . . . office holds it subject to removal, in the manner provided by law under this section of the Constitution, which commits to the legislature the whole subject of removal. They are to prescribe the mode in which it shall be done, and this includes everything necessary for the accomplishment of the object. The causes, the charges, the notice, the investigation and the determination, and by whom these shall be conducted and the removal adjudged, are all in the discretion of the legislature.''

Since the removal of a public official from office by the Governor pursuant to the authority vested in him by the statute under consideration is the exercise of an executive or administrative function and the investigation of the facts upon which he is to exercise that function does not constitute him a court within the inhibition of section 135 of the Constitution, it follows that we are without power to control his actions in this connection by an original writ of prohibition in this court. Constitution, section 110.

The general and special demurrers of the defendant to the petition are both sustained; the petition is dismissed, and the motion for a writ of prohibition denied.

Whole court sitting.