# Johnson v. Laffoon.

(Decided Nov. 13, 1934.)

(As Extended on Denial of Rehearing Jan. 7, 1935.)

GEORGE R. HUNT, CLIFFORD E. SMITH, WATSON CLAY, HARRIS W. COLEMAN and JOHN C. DOOLAN for appellant.

BAILEY P. WOOTTON, Attorney General, 'S. H. BROWN, F. M. BURKE, and D. C. WALLS, Assistant Attorneys General, and WOODWARD, HAMILTON & HOBSON, G. OLDHAM CLARKE, ELWOOD HAMILTON and GEORGE H. MITCHELL for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

A demurrer having been sustained to the petition of the appellant and he having declined to plead further, the same was dismissed. This appeal results.

It appears from the petition that the appellant, the Honorable Ben Johnson, was appointed by the Honorable Ruby Laffoon, then and now Governor of this Commonwealth, road commissioner for the Fourth road dis-

trict of Kentucky on February 3, 1932, for a term expiring February 1, 1936. This appointment was promptly sent to the state Senate, which was then in session, and was promptly approved and confirmed by that body. A commission was then issued to the appellant, and he at once qualified as a member of the state highway commission of Kentucky, and has ever since that time so acted. On the 3d of February, 1932, he was elected chairman of the state highway commission and has filled this office since that time.

By chapter 138 of the Acts of 1934, section 3750 of the Kentucky Statutes was repealed, amended, and re-enacted. Prior to the Act of 1934, section 3750 of the Statutes read:

"No person appointed to an office by the governor, by and with the advice and consent of the senate, shall be removed therefrom by the governor, during the term for which he was appointed, unless for failure to discharge, or neglect in the performance of the duties of his office. And any person removed for such cause shall be notified, in writing, of the cause of his removal; and the facts connected therewith shall be laid before the senate by the governor at its next session. Unless otherwise provided, all persons appointed to an office by the governor, whether to fill a vacancy, or as an original appointment, shall hold office, subject to the advice and consent of the senate, which body shall take appropriate action upon such appointments at its first session held thereafter."

Since the act of 1934, that section reads:

"Any person heretofore or hereafter appointed to an office by the Governor either with or without the advice and consent of the Senate may be removed therefrom by the Governor, during the term for which he was appointed, for any cause the Governor may deem sufficient, and if the Governor deems it advisable that any officer should be removed he may simply make an order to that effect in the Executive journal, and said office shall thereupon be vacant and said vacancy may be filled in the manner provided by law."

The petition avers that the appellee has announced that pursuant to the provisions of this act of 1934, he is going to remove the appellant from his office as road

commissioner and chairman of the state highway commission simply by entering an order to that effect in the executive journal and without preferring any charges or assigning any reasons therefor, and without any semblance of a hearing or trial. Claiming that the act of 1934 is unconstitutional and invalid, and not applicable as to him, the appellant brings this suit under the Declaratory Judgment Act for a declaration of his rights and for injunctive relief to protect such rights. In his prayer, the appellant asks that he be continued in the discharge of the functions of the office he holds, and that it be declared that the appellee has no right to remove him from that office or to obstruct him in the discharge of the functions of the same.

First. It is contended that the act of 1934 is unconstitutional because the title to the act does not conform to the requiremens of section 51 of the Constitution, in that it refers to section 3750 of the Kentucky Statutes, 1930 Edition, only, and does not refer to chapter 30 of the Acts of 1932, under which the appellant was appointed to office, or to the sections found in the Supplements to the 1930 Statutes, and which contain the matter included in this chapter 30 of the Acts of 1932 (Ky. Stats. Supp. 1933, sec. 4356t-3a et seq.). This act of 1932, under which the appellant was appointed, contains no provisions relating to the removal from office of any of the members of the commission created by that act. Prior to the act of 1932 here in question, it cannot be doubted but that the members of this road commission were all subject to removal as provided by section 3750 of the Kentucky Statutes as it then stood. In the case of Sewell v. Bennett, 187 Ky. 626, 220 S. W. 517, 520, in holding that the appointment of three members to the Workmen's Compensation Board came within the purview of section 3750 of the Statutes as it stood prior to the 1934 amendment, we said:

"It was manifestly the purpose of the Legislature in adopting the sections in this chapter to make provision for omissions and deficiencies in special acts, of which there are great numbers creating offices and officers, and that the Legislature had the power, except in so far as it was restrained by the Constitution, to enact these general provisions relating to offices and officers, will not be controverted, nor will it be disputed that these general

provisions, in so far as applicable and not in conflict with the provisions of the legislative acts creating offices and officers, are to be read in connection with and as a part of such acts.''

Now it is true that, when a statute adopts a part or all of another statute by a specific and descriptive reference thereto, the adoption takes the statute as it exists at that time. The subsequent amendment or repeal of adopted statute has no effect on the adopting statute, unless it is also repealed expressly or by necessary implication. Burns v. Kelley, 221 Ky. 385, 298 S. W. 987. But this rule has application only to where the adoption is by a specific and descriptive reference. Where the reference is not to any particular statute or part of a statute, but to the law generally which governs a particular subject, the reference in such case means the law as it exists at the time the exigency arises to which the law is to be applied. Cole v. Wayne Circuit Judge, 106 Mich. 692, 64 N. W. 741. In Culver v. People, 161 Ill. 89, 43 N. E. 812, 814, the Supreme Court of Illinois said:

"Where, however, the adopting statute makes no reference to any particular act, by its title or otherwise, but refers to the general law regulating the subject in hand, the reference will be regarded as including, not only the law in force at the date of the adopting act, but also the law in force when action is taken or proceedings are resorted to."

In Newman v. North Yakima, 7 Wash. 220, 34 P. 921, the Supreme Court of Washington said:

"By this act of incorporation, it was provided only that certain things in connection with the levy and collection of taxes should be done in accordance with the provisions of the existing law, and in some places the term used was that the act should be done in accordance with the provisions of the law now in force, or words to that effect. But in none of the references thus made was there any special act, section, or provision of the general law set out or indicated; and taking all of such references, and construing them together, we feel compelled to hold that the legislature thereby intended simply to provide that such acts should be done in accordance with the provisions of the general law in force at the time of the doing thereof."

'And in Gaston v. Lamkin, 115 Mo. 20, 21 S. W. 1100, 1103, the Supreme Court of Missouri said:

"But when the subsequent statute, being a general one, does not refer specifically to a former statute for the rule of procedure to be followed, but generally to the established law, by some such expression as 'the same as is provided for by law' in given cases, then the act becomes a rule for future conduct, to be found when needed by reference to the law governing such cases at the time when the rule is invoked."

The act of 1932 contains no provisions relating to the removal from office of the members of the highway commission, but, as held in the Sewell Case, the members of the highway commission hold their offices subject to the provisions of the general law relating to appointment and removal, except where such provisions are in conflict with the express provisions of the act creating the office. And, as we have seen, there is none here with reference to the matter of removal from office. It follows, therefore, that the act of 1932 creating the office of road commissioners is to be construed as though it contained some such provision as this, "subject to removal as provided by law." This is no specific and descriptive reference to an adopted statute. Hence the officers appointed by virtue of the 1932 act hold their office subject to removal according to the law as it exists at the time the exigency arises to which the law is to be applied. The title to the act of 1934 is:

"An Act relating to the appointment and removal of officers; repealing, amending and re-enacting section 3750, Carroll's Kentucky Statutes, 1930 Edition, and repealing all conflicting laws."

It aptly describes and sets out what is contained in the body of the act. It complies in every respect with section 51 of the Constitution. It was not necessary that it should refer to all the various acts creating offices which came within the purview of section 3750 prior to the 1934 amendment. In so far as these acts were simliar to the act of 1932, creating the highway commission, the officers held their office subject to removal as the law might from time to time prescribe. It was only necessary to amend the general law to change the provisions of removal. When they were changed, all these offices automatically came within the purview

of the changed provisions. The first contention must be disallowed.

Second. It is contended that appellant occupies two distinct offices: (a) Road commissioner; (b) chairman of the highway commission; that he holds the first office by virtue of his appointment by the Governor, but the second by virtue of an election of the members of the state highway commission; that, whatever may be the right of the Governor to remove him from the office of road commissioner, the Governor has no right to remove him from the office of chairman of the state highway commission if the act of 1934 be valid, since its provisions are applicable only to appointments made by the Governor.

Section 1 of the 1932 act (Ky. Stats. Supp. 1933, sec. 4356t-3a) provides that the members of the state highway commission shall select a chairman from among its members. It is clear that the act requires the chairman of the commission to be also a member of the commission. If for any reason the chairman of the commission is lawfuly removed as a member of the commission, his right to serve as chairman fails because of lack of support; that is, membership on the commission. The case of Commonwealth v. Stump, 247 Ky. 589, 57 S. W. (2d) 524, 525, is conclusive of this question. There disbarment proceedings were instituted against Stump, who was commonwealth's attorney for the district of his residence. It was argued by Stump that his disbarment would result in his being disqualified to hold the office of commonwealth's attorney and so remove him from office without impeachment charges being preferred and such charges tried by the Senate, as the Constitution requires; that for this reason the courts were without power to disbar him. In denying this contention, we said:

"In doing so they [authorities cited] point out that the loss of the office in case of disbarment is only an incident thereto, which results as a consequence of the loss of the right to practice law, since the prosecuting attorney is, most generally at least, required to be a member of the bar and have license to practice law as a prerequisite to holding his office, and if he is deprived of such license he is no longer qualified to fill the office. They also correctly hold that the purpose and object of the disbarment proceeding is not to deprive the re-

spondent of his office, but only to take away from him a necessary qualification to hold it, and which is no more an impeachment proceeding than if the officer should remove from the state and become a nonresident, thereby disqualifying him from holding the office, and a controversy should subsequently arise as to whether or not there was a vacancy in his office. In that case the result of a determination by the court of the permanent removal of the officer from the jurisdiction would necessarily result in the forfeiture of his office as effectually as if he had been impeached; but surely it could not be insisted that the agency of government who had the right to appoint a successor, or a court who might be called upon to determine whether or not there was a vacancy, would be deprived or barred from performing such duties, because the result would be as effectual to deprive the incumbent of his office as would follow a finding of guilty on a charge of impeachment.''

It follows, then, that, if the Governor may lawfully remove the appellant from the office of road commissioner pursuant to the act of 1934, the appellant loses his right to the office of chairman of the state highway commission, not because the Governor can remove him from that office under the 1934 act, but because the Governor can take from him an indispensable requisite or qualification for that office; that is, membership on the highway commission. That gone, the appellant ceases to be eligible to the office of chairman of the highway commission, and hence must lose that office too.

Third. It is contended that the power of removal is not incident to the power of appointment. That this is the law of Kentucky is, and needs must be, conceded. McChesney v. Sampson, Governor, 232 Ky. 395, 23 S. W. (2d) 584. It is likewise true that the power of removal is not inherent in the Governor. Page v. Hardin, 8 B. Mon. 648. But this, of course, does not mean that the power of removal may not be vested in the Governor. Illustrative of this, appellant does not question the validity of section 3750 of the Statutes prior to the act of 1934. But he argues that such section as it then read provided for a removal only for cause, the cause being set out in the statute with the requirement that a report of the removal be laid before the Senate at its next session, whereas the section as amended by

the 1934 act provides for removal with or without cause, and without a trial or hearing. He contends that such power cannot be vested in the Governor, since its exercise would deprive an officer with a fixed term as here of a property or quasi property right in his office, and would be an expression of arbitrary power, a thing forbidden by section 2 of the Bill of Rights. In discussing this contention, we must first recall that we are dealing with a statutory office and not a constitutional one; with an appointive officer and not one elected by the people. Whatever may or may not be the rule as to constitutional and elective officers, it is the rule supported by an overwhelming weight of authority that an officer holding an appointive statutory office may be removed therefrom with or without cause, with or without trial, arbitrarily or otherwise, just as the statute providing for his removal may prescribe. Thus in the case of Trainor v. Board of Auditors, 89 Mich. 162, 50 N. W. 809, 811, 15 L. R. A. 95, the court said:

> "And, although it is the undoubted policy of our state, and best in accord with our system of government, that officers should hold for fixed terms, and not be subject to removal at the will or caprice of the appointing power, yet there is no constitutional objection to the conferring of such power of removal in offices not elective, and the legislature has undoubted authority to do so. 1 Dill. Mun. Corp. sec. 250; Mechem, Pub. Off., sec. 454."

And in Sweeney v. Stevens, 46 N. J. Law, 344, it is said:

> "The Legislature, in creating the office, had the right to provide for its vacation in such manner as they saw fit, and in ascertaining what the manner is, we must take their language in its ordinary import."

In the case of People v. Dreher, 302 Ill. 50, 134 N. E. 22, 24, the Supreme Court of Illinois said:

> "There is no prohibition or limitation in the Constitution of this state on the power of the Legislature to prescribe the means by which officers, other than judicial officers, below the grade of state officers, may be removed from office. That power, therefore, rests entirely in the hands of the Legislature."

See, also, People ex rel. Gere v. Whitlock, 92 N. Y.

191; Donahue v. Will County, 100 Ill. 94; Eckloff v. District of Columbia, 135 U. S. 240, 10 S. Ct. 752, 34 L. Ed. 120; People v. Higgins, 15 Ill. 110; State v. Prince, 45 Wis. 610; State v. Doherty, 25 La. Ann. 119, 13 Am. Rep. 131; 25 Am. & Eng. Ency. of Law, 431, 433, citing Trimble v. People, 19 Colo. 189, 34 P. 981, 41 Am. St. Rep. 236; Lynch v. Chase, 55 Kan. 367, 40 P. 666; Townsend v. Kurtz, 83 Md. 331, 34 A. 1123.

Among our domestic cases is that of Standeford et al. v. Wingate et al., 2 Duv. 440. In that case, the city charter of Lexington prior to 1864 provided for the election of city officers on the first Saturday in January of each year for a term of one year to begin immediately after the election. In 1864, the charter was amended so as to provide for a term of two years for the offices in question. An election was held under this amendment, and the officers elected were installed. In 1866 the Legislature repealed the act of 1864 and re-enacted the old law, providing for terms of one year, and provided for the election to take place on the first Saturday in March. Officers were elected in March, 1866, and they attempted to take possession of the offices held by the officers elected in 1865 for the two-year term. Those officers elected in 1865 resisted this effort on the ground that the Legislature was without power to disturb their tenure by the act of 1866. In upholding the right of the Legislature to do so, Judge Robertson, writing for the court, said:

"An office established by the Constitution cannot be abolished by the Legislature, nor can an officer's term, fixed by the Constitution, be reduced or altered by an act of Assembly. But any office established by statute may be abolished by statute, unless it be a contract, which cannot be impaired by legislation."

In regard to the contention that the right to hold office is contractual, the court in that opinion said:

"An office established and held for the public good is not a contract, nor is its tenure secured by any binding contract; and a legislative office should depend for its tenure, as well as its existence, on legislative discretion. No constitutional truth is more obvious, or has been more conclusively settled in this country.

"Legislative offices established for the public

good depend on the popular will, and may be abolished or changed for the common welfare; and the incumbent functionaries hold, not by contract, but at the will of the Legislature. * * *

"The argument of this case admits that the charter might be revoked, or the offices otherwise abolished, without any violation of the Constitution. But, nevertheless, the counsel on one side argue, that, as long as the offices exist, the terms prescribed at the time of election cannot be curtailed during the incumbency of the elected. This we cannot admit. Power to abolish an office is power to abolish or reduce its tenure. The office and its tenure are the constituent elements of the incumbent's title to the honors and profits. This title ceases constitutionally whenever the office is abolished, and he holds it, therefore, subject to the legislative will; and no office dependent on legislative will should have any other tenure than the same will. The Constitution never contemplated such an absurdity as a constitutional right of holding any such office against the public sentiment and public interest as represented and expressed by their legislative organ; and therefore it does not fix the tenure, but leaves it to be regulated by law, which is the authoritative expression of the legislative will; and, consequently, it provides only that the term shall be 'such as may be prescribed by law'— whenever, of course, the Legislature may choose to prescribe it—there being no limitation as to the term; and had it intended any such limitation, as the law existing at the time of the election, it would have said so, instead of saying 'for such terms as may be prescribed by law.' Then it does seem to us that, as certainly as the whole includes all its constituent parts, power to abolish the whole is power to reduce any of its parts—that power to destroy the principal includes the power to limit the incident—and that power to annihilate the substance, implies the power to diminish the shadow. * * *

"And although the right to enjoy these offices may be property, in a peculiar sense, and to a qualified extent, yet its tenure depends on legislative will, which may either deprive the dependent owner of that property by abolishing the office, or diminsh,

its value by curtailing the term. When the incumbent accepts and holds by such a precarious tenure, no declamation about liberty, security, and the sacredness of property, is either applicable to his case as a functionary, or befitting the occasion of a constitutional abrogation of the office, or a discretionary curtailment of the term for promoting the common welfare. * * *

"But, however this may be, the Constitution did not give fundamental fixidity to such offices, nor, consequently, fundamental stability to their tenure. And the argument in favor of the assumed policy of such stability is altogether irrelevant and futile. The sovereign people, when they made their organic law, were the best and only rightful judges of that; and the inherent sovereignty of the people, and especially over their own agents, limited only by that organic law, should not be circumscribed by speculations about policy, or by any doubtful construction of their supreme law.

"The value of the qualified property in an office consists of its salary and its duration; and nothing is more conclusively adjudged than that neither element is secured by contract. And it is self-evident that they both depend on the popular will, when by their Constitution, the people have not surrendered their own power over them."

This case is conclusive of this third contention of appellant. No constitutional limitation has been pointed out which restricts the Legislature from vesting the Governor with the power of removal given him by this 1934 act with reference to a statutory office such as appellant holds. The power of removal thus vested in the Governor is neither legislative nor judicial in character. As held in Holliday v. Fields, 207 Ky. 462, 269 S. W. 539, the removal of a public official from office by the Governor pursuant to a statute vesting him with such power is the exercise of an administrative or executive function. Even though the Governor be required to hold a hearing and investigate the facts upon which the removal is based, such does not constitute him a court or vest him with judicial functions contrary to the requirements of our Constitution as to the separation of powers of government. Holliday v. Fields, supra. The act of 1934 is not an ex post facto law, ror, as we have seen, the officer held his office from its

168

inception subject to removal as prescribed by law at the time of the removal. The office in question is purely a statutory one. It is the creature of the Legislature and subject to its will. South v. Commissioners of Sinking Fund, 86 Ky. 188, 5 S. W. 567, 9 Ky. Law Rep. 478; Sinking Fund Commissioners v. George, 104 Ky. 260, 47 S. W. 779, 20 Ky. Law Rep. 938, 84 Am. St. Rep. 454; Hoke v. Richie, 37 S. W. 83, 18 Ky. Law Rep. 523.

Since, as we have seen, the right to hold the office here in question is one not secured by contract nor a property right except in a peculiar or qualified extent, in that its tenure depends on legislative will which may either deprive the dependent owner by abolishing the office or diminishing its value by curtailing the term, it follows that the act of 1934 is not in conflict with the Fourteenth Amendment to the Federal Constitution or any other provision of that instrument.

What we have said being so, it results that the lower court did not err in holding the act of 1934 constitutional, valid, and applicable to the office held by the appellant and in denying the appellant the injunctive relief he sought. The judgment is affirmed.

Whole court sitting, with the exception of Thomas, J., who took no part in the decision of this case.

Richardson and Ratliff, JJ., while concurring in the result, do not fully concur in the construction placed by the opinion on section 2 of the Bill of Rights.