

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

April 12,1948

Hon. Gibb Gilchrist, President
A & M College of Texas
College Station, Texas    Opinion No. V-539.

Re: Several questions relative
to H.B. 326, Acts 50th Leg-
islature, which makes work-
men's compensation insur-
ance available for certain
employees of institutions
under the direction of Texas
Agricultural & Mechanical
College.

Dear President Gilchrist:

Reference is made to your request for an opin-
ion on the above-captioned subject, from which we quote
as follows:

"We would like for you to give us legal
rulings on the following questions:

"(1)  Is the Board of Directors of the
College required to put into effect the Work-
men's Compensation Insurance provided for by
this Act?

"(2)  May the Board of Directors of the
College place the insurance provided for under
this Act, or any part of such insurance with
the Texas Employer's Insurance Association or
with a commercial insurance concern authoriz-
ed to do business in Texas and pay the prem-
iums on same?

"(3)  Under Chapter 229, Acts of the 50th
Legislature, several statutes are adopted by
reference, particularly in Sections 2-5, 2-6,
2-7, and in Section 7 itself.  The statutes
make no provision for subsequent amendments
to the adopted Act, and we have proceeded in
the belief that the Law, as passed for the

A. and M. College System, is to be interpreted in accordance with the adopted statutes until the Legislature itself might take action to make other provisions of the General Laws applicable to us. Particular reference is made to Chapters 113, 307, and 349, 50th Legislature. Are we correct in this interpretation?"

H. B. 326, Ch. 229, Acts 50th Leg., was patterned after and is substantially identical with Acts 1937, 45th Leg., p. 1352, ch. 502, codified in Vernon's Civil Statutes as Art. 6674s, which made workmen's compensation insurance available to employees of the State Highway Department. The latter Act became a law on June 11, 1937, but was not put into effect by the Highway Department until January 1, 1938.

Throughout this opinion, we shall refer to H. B. 326, Acts 50th Leg., as the Texas A & M Workmen's Compensation Act, and we shall refer to Art. 6674s, as the Highway Department Workmen's Compensation Act.

The leading case on the Highway Department Workmen's Compensation Act is State Highway Department v. Gorham, 139 Tex. 361, 162 S. W. (2d) 934, by the Texas Supreme Court. As the two acts are substantially identical, and as the inquiries you have made are closely related to the holding in that case, we shall quote from it at length.

Question No. 1:   Is the Board of Directors of the College required to put into effect the Workmen's Compensation Insurance provided for by this Act?

It is the opinion of this office that the Board of Directors is required to put the program in operation within a reasonable time after it became a law. We base our opinion on the language of the statute and on the holding of the Court in the Gorham case.

Let us examine the portions of the Texas A & M Workmen's Compensation Act having any pertinence to discretion in the Board of Directors in so far as initiating the program.

From the caption:

"An Act providing Workmen's Compensation
Insurance for certain employees of the insti-
tutions and agencies under the direction or
government of the Board of Directors of the
Agricultural and Mechanical College of Texas
. . ."

From the body of the Act:

"Sec. 3. After the effective date any
workman, as defined in this Act, who sustains
an injury in the course of his employment shall
be paid compensation as hereinafter provided.

"The institution is hereby authorized to
be self-insuring and is charged with the admin-
istration of this Act. The institution shall
notify the Board of the effective date of such
insurance, stating in such notice the nature
of the work performed by the workmen of the in-
stitution, the approximate number of workmen,
and the estimated amount of pay roll.

"The institution shall give notice to all
workmen that, effective at the time stated in
such notice, the institution has provided for
payment of insurance . . ."

"Sec. 4. If a workman of the institution
sustains an injury in the course of his employ-
ment, he shall be paid compensation by the in-
stitution, as hereinafter provided."

"Sec. 12. The institution shall hereafter
keep a record of all injuries fatal or other-
wise, sustained by its workmen in the course
of their employment. . ."

"Sec. 13. The institution is authorized
to promulgate and publish such rules and regu-
lations and to prescribe and furnish such forms
as may be necessary to the effective adminis-
tration of this Act,. . ."

"Sec. 19. The institutions covered by
this Act are hereby authorized to set aside
from available appropriations other than item-
ized salary appropriations an amount not to

exceed two per cent (2%) of the annual work-
man pay roll of the institution for the pay-
ment of all costs, administrative expense,
charges, benefits, and awards <u>authorized</u> by
this Act." (Emphasis supplied)

It is immediately apparent that certain por-
tions of the Act use the imperative verb "shall" while
other portions speak of merely "authorizing" certain
action, which connotes a permissive admonition. Yet
a careful scrutiny of those sections which say that
certain action "shall" be done indicates that such sec-
tions contain the substantive parts of the Act, while,
on the other hand, the sections which indicate mere
"authority" set up the administrative and procedural
aspects of the coverage under the statute. It is our
opinion that this precludes optional discretion in the
Board of Directors as to whether they will institute
the Act or not.

Any doubt there may have been on this point
is removed by the holding in the Gorham case. Let us
compare the Texas A & M Workmen's Compensation Act with
the Highway Department Workmen's Compensation Act, for
the purpose of observing the disposition made on the
issue of discretion in the State agency in the holding
in the Gorham case.

Both Acts provide that the respective employ-
ers are <u>authorized</u> to promulgate and publish rules and
<u>regulations, and to</u> prescribe and furnish such forms
as may be necessary for the effective administration
of the Acts. They both require the designation of a
convenient number of physicians and surgeons to make
physical examinations of all persons in the employ of
the State agency, and to determine those who are phy-
sically fit to be classified as employees or workmen.

There are provisions in both Acts to the ef-
fect that no person shall be certified as an employee
or as a workman unless and until he has submitted him-
self to a physical examination and is found to be phy-
sically fit for the duties to which he is assigned.

Both Acts <u>authorize</u> the employer in each in-
stance to set aside <u>from their</u> available appropriations
an amount not to exceed a specific percentage of the
annual pay roll for the payment of all costs, adminis-
trative expense, charges, benefits, and awards author-
ized by the Acts. Both employing State agencies are

charged with the duty of keeping a record of all injuries sustained by their employees or workmen in the course of their employment, and of making a record thereof to the Industrial Accident Board.

Then turning to the Gorham case, we conclude that a necessary implication therefrom is that such program must be instituted within a reasonable time, authorizing the institution only to take sufficient time to set up the necessary machinery to administer effectively the plan but not to have discretion over whether it will ever inaugurate the plan or not.

In support of this position, we quote the following from State Highway Department v. Gorham, supra:

"After June 11, 1937, the department was authorized and required to promulgate rules and regulations, and to prescribe and furnish forms for the effective administration of the law. It was authorized to set aside from its appropriation an amount not to exceed $3\frac{1}{2}\%$ of its annual labor payroll, to cover all costs of the program. It necessarily had to investigate the number of employees to be included, the risks covered and the probable cost to the department. The department was required to designate a convenient number of doctors, and was authorized to conduct physical examinations of employees. Since the program was to be administered in connection with the Industrial Accident Board, the statute prescribed that the Board be notified of the nature of the work performed by the employees, the approximate number of employees, and the estimated amount of the payroll. The Legislature must have contemplated that it would take a reasonable time to put this program in operation. . .

"We believe, when we read the Act as a whole, that it was the intention of the Legislature to leave it to the department to set up the rules, regulations and machinery necessary to put in operation the method of paying compensation to employees for injuries sustained while in the employ of the department; and that such insurance

could not take effect until the department
had inaugurated the system and notified the
Industrial Accident Board of the effective
date of such insurance.  <u>In any event, there</u>
<u>are no pleadings in this case that the de-</u>
<u>partment was negligent in any manner in get-</u>
<u>ting the plan in operation, or that it was</u>
<u>guilty of any unreasonable delay . . ."</u>

A holding that the Highway Department had a
<u>reasonable time within</u> which to put its Act into oper-
ation is incompatible with the view that the Department
had the absolute <u>discretion</u> as to whether they would
put the Act into <u>operation.</u>  In view of the foregoing
language quoted from the Gorham case and from the Act
we conclude that the Workmen's Compensation System is
required to be put into effect.

Question No. 2:  May the Board of Directors
of the College place the insurance provided for under
this Act, or any part of such insurance with the Texas
Employer's Insurance Association or with a commercial
insurance concern authorized to do business in Texas
and pay the premiums on same?

The Act specifically says that the institu-
tion is authorized to be self-insuring and is charged
with the administration of the Act and the payment of
awards; an appropriation therefor is provided; and
there is no provision in the Act authorizing the Board
of Directors to place such insurance with the Texas
Employer's Insurance Association or with any other com-
mercial insurance concern, all of which preclude the
Board of Directors of the College from placing the
workmen's compensation insurance with any insurance
concern.

Question No. 3:  Under Chapter 229, Acts of
the 50th Legislature, several statutes are adopted by
reference, particularly in Sections 2-5, 2-6, 2-7, and
in Section 7 itself.  The statutes make no provision
for subsequent amendments to the adopted Act, and we
have proceeded in the belief that the Law, as passed
for the A. and M. College System, is to be interpreted
in accordance with the adopted statutes until the Leg-
islature itself might take action to make other provis-
ions of the General Laws applicable to us.  Particular
reference is made to Chapters 113, 307 and 349, 50th
Legislature.  Are we correct in this interpretation?

In substance, you have asked whether the Texas A & M Workmen's Compensation Act is affected by subsequent amendments to the portions of the general workmen's compensation statutes that are adopted in the Texas A & M Workmen's Compensation Act by direct reference.

This issue has been conclusively and directly determined by the Texas Supreme Court in Trimmier v. Carlton, 116 Tex. 572, 296 S. W. 1070. It was there held:

> "Statutes which refer to other statutes and make them applicable to the subject of legislation are called 'reference statutes,' and are a familiar and valid mode of legislation. The general rule is that when a statute is adopted by a specific reference, the adoption takes the statute as it exists at that time, and the subsequent amendments thereof would not be within the terms of the adopting act. . ."

Other authorities supporting this rule include Dabney v. Hooker, 121 Okla. 193, 249 P. 381; Johnson v. Laffoon, 257 Ky. 156, 77 S. W. (2d) 345; Williams v. State, 100 Fla. 1570, 131 So. 864; 39 Tex. Jur. 129, Sec. 66; Sutherland on Statutory Construction, Vol. 2, p. 548.

We, therefore, conclude that the statutory changes to the general workmen's compensation statutes, embodied in Chapters 113, 307 and 349 of the Acts of the 50th Legislature, do not affect the coverage of the Texas A & M Workmen's Compensation Act.

Although certain sections of the Chapters you have enumerated amend sections of the general workmen's compensation statutes specifically adopted by reference in the Texas A & M Workmen's Compensation Act, they all became effective after the Texas A & M Workmen's Compensation Act became effective; and therefore, they are subsequent amendments to adopted statutes, which do not affect the coverage.

## SUMMARY

1. The Board of Directors of Texas A & M College is required to provide the workmen's compensation insurance for workmen employed in the institutions and agencies covered by Chapter 229, Acts 50th Legislature, 1947, within a reasonable time after it became a law. State Highway Dept. v. Gorham, 139 Tex. 361, 162 S. W. (2d) 934.

2. The Board of Directors of Texas A & M College is not authorized to place the insurance provided for under Chapter 229 with the Texas Employer's Insurance Association, nor with any other commercial insurance concern.

3. Chapters 113, 307 and 349, of the Acts 50th Legislature, which embody amendments and additions to the general workmen's compensation statutes, do not affect the Texas A & M Workmen's Compensation Act (Ch. 229, Acts 50th Leg.) which specifically adopts certain provisions of the general workmen's compensation statutes. Trimmier v. Carlton, 116 Tex. 572, 296 S. W. 1070.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Dean J. Capp
Assistant

APPROVED:

FIRST ASSISTANT
ATTORNEY GENERAL.

DJC:jmc