Amy Jerrine MISCHLER, Appellant

v.

Hon. Larry THOMPSON, Pike County Family Court Judge; David Deskins, Pike County Circuit Court Clerk; and Fred Hatfield, Pike County Trial Commissioner, Appellees

and

Jonah Lee Stevens, Real Party in Interest.

No. 2013–SC–000030–MR.

Supreme Court of Kentucky.

Feb. 20, 2014.

As Modified on Denial of Rehearing Aug. 21, 2014.

Amy Jerrine Mischler, pro se, for Appellant.

Nicole Hou Wen Pang, Counsel for Hon. Larry Thompson, Pike County Family Court Judge and David Deskins, Pike County Circuit Court Clerk.

Fred Hatfield, pro se, Counsel, for Fred Hatfield, Pike County Trial Commissioner.

Niles Brian Cumbo, Counsel, for Jonah Lee Stevens, Real Party in Interest.

## OPINION OF THE COURT

Appellant, Amy Mischler, appeals from an order of the Court of Appeals denying her motions for writs of mandamus by which she sought to challenge actions in the Pike Circuit Court relating to the filing and dismissal of two domestic violence petitions. Appellees, Pike Circuit Judge

Larry Thompson; former Pike Circuit Court Clerk David Deskins; former Pike County Trial Commissioner Fred Hatfield; and Real Party in Interest Jonah Lee Stevens contend that under the circumstances and procedural posture of this case, the Court of Appeals correctly concluded that a writ of mandamus is not a viable remedy under which Appellant may obtain relief. We agree, and therefore affirm the decision of the Court of Appeals.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant is the former wife of Real Party in Interest Jonah Lee Stevens. The final decree ending their marriage was entered in October 2001. Nearly twelve years ago, in July 2002, Appellant and Stevens filed competing domestic violence petitions in Pike County. As a result, emergency protective orders (EPOs) were entered against each. Because the two cases were so closely related, they were consolidated for procedural convenience and judicial economy.

Shortly after the entry of the orders, Judge Thompson recused from both cases and Judge Julie Paxton from Floyd County was appointed as Special Judge to preside over the cases. It appears that neither Stevens nor Appellant contemporaneously objected to either Judge Thompson's recusal or to Judge Paxton's appointment as Special Judge. In September 2002, Judge Paxton entered orders dismissing both of the domestic violence orders. No appeals were taken from the dismissal orders, and so after thirty days they became final. See CR 73.02($l$)(a) ("The notice of appeal shall be filed within 30 days after the date of notation of service of the judgment or order under Rule 77.04.").

On August 5, 2011, Appellant petitioned the Court of Appeals for a writ of mandamus against Deskins in which she claimed that he should not have entered the EPO dismissal orders into the record because, in her view, they were void *ab initio*. As relief Appellant presumably sought to have Deskins remove those orders from the record, though she does not explicitly state this. A few weeks later, she filed another petition for a writ of mandamus against Deskins, Hatfield, and Judge Thompson likewise seeking, apparently, to challenge the 2002 EPO proceedings.[1]

As presented in her petitions, Appellant's primary claim was that Judge Thompson's recusal from the EPO cases was not done properly and, therefore, he was never removed from the case. Consequently, Appellant claims that Judge Paxton's appointment to the case as Special Judge was invalid and so Judge Paxton lacked the authority to preside over the matter and the orders she entered were void *ab initio*. Appellant's primary complaint against Deskins was that he entered Judge Paxton's improper dismissal orders into the record. Her primary complaint against Trial Commissioner Hatfield was that he was not properly qualified and had impermissibly issued the initial EPOs.

The Court of Appeals dismissed the petition for a writ of mandamus against Deskins on the basis that a mandamus action may not be brought against a circuit court clerk because he is a non-judicial officer. The Court of Appeals denied Appellant's other petition for a writ of mandamus on the grounds that it had no authority to issue a writ of mandamus against Deskins or Hatfield because they are not judicial officers, that Judge Thompson had proper-

---

1. Appellant was proceeding as a *pro se* litigant and her pleadings are, therefore, understandably inartful, requiring us to make assumptions as to the precise relief requested.

ly recused, and that the orders issued by Judge Paxton were valid.

For the reasons explained below we affirm the Court of Appeals.

## II. APPELLANT IS NOT ENTITLED TO A WRIT OF MANDAMUS TO COMPEL THE CIRCUIT CLERK TO REMOVE AN ORDER FROM THE COURT RECORD

As we interpret her petitions, Appellant sought a writ to compel the Pike Circuit Clerk, David Deskins, to remove the orders issued by Judge Paxton in September of 2002. Deskins argues that the writ-issuing authority of the Court of Appeals extends only to writs against judicial officers, and that as the circuit court clerk of Pike County, he is not a judicial officer. In support of his argument, he cites *Sandusky v. Alsmiller*, 291 Ky. 666, 165 S.W.2d 342 (1942), holding that Section 110 of the Kentucky Constitution does not permit an appellate court to issue a writ of mandamus against a circuit clerk.[2]

It may appear at first glance that *Sandusky* and similar cases would be dispositive of the issue. The issue, however, is not that simple because *Sandusky* and the other cases relied upon by Deskins were all decided under Section 110 of the Kentucky Constitution as it existed *before* the reformation of Kentucky's judicial system by the adoption of the Judicial Article, §§ 109–124, that became effective in 1976.

Section 110 of the 1891 Kentucky Constitution, which was in effect until 1976, provided as follows: "The Court of Appeals shall have appellate jurisdiction only[.] ... Said court shall have power to issue such writs as may be necessary to give it a general control of inferior courts." In numerous cases prior to 1976, our predecessor court consistently held that "[w]rits of prohibition issue from this court pursuant to the power granted by section 110 of the State Constitution to control the action of inferior courts *but will not issue except against an inferior court.*" *Commonwealth ex rel. Breckinridge v. Wise*, 351 S.W.2d 491, 492 (Ky.1961) ("Writs of prohibition issue from this court pursuant to the power granted by section 110 of the State Constitution to control the action of inferior courts but will not issue except against an inferior court.") (quoting *Brents v. Burnett*, 295 Ky. 337, 174 S.W.2d 521, 522 (1943)).

The analogous provisions of our post–1976 Constitution, §§ 110(2)(a)[3] and 111(2),[4] provide different articulations of our appellate courts' power to entertain original actions for writs of mandamus or prohibition. It is not immediately obvious to us that the limitation provided by the Constitution prior to 1976 is the same limitation imposed, post–1976, in Section 111(2).

Arguably, what a Court must do in "aid of its appellate jurisdiction" or "the com-

---

**2.** See also *Foster v. Clerk of Lyon Circuit Court*, 254 S.W.2d 942 (Ky.1953); *Holliday v. Fields*, 207 Ky. 462, 269 S.W. 539 (1925) (only judicial acts can be controlled under the authority of Section 110 of the Constitution of Kentucky); *Patton v. Stephens*, 77 Ky. 324 (1878) (a writ of prohibition may be directed only to judicial tribunals).

**3.** Section 110(2)(a) provides: "The Supreme Court shall have appellate jurisdiction only, except it shall have the power to issue all writs necessary in aid of its appellate jurisdic-

tion, or the complete determination of any cause, or as may be required to exercise control of the Court of Justice."

**4.** Section 111(2) provides, in pertinent part: "The Court of Appeals shall have appellate jurisdiction only, [ ] and it may issue all writs necessary in aid of its appellate jurisdiction, or the complete determination of any cause within its appellate jurisdiction. In all other cases, it shall exercise appellate jurisdiction as provided by law."

plete determination of any cause within its appellate jurisdiction" is somewhat broader than what is necessary to "give it a general control of inferior courts." In any event, the constitutional provision forming the foundation for the traditional rule relied upon by Deskins and the Court of Appeals to exempt the circuit clerk from the Court of Appeals' writ power is gone. We have not explicitly re-evaluated the traditional rule expressed in *Sandusky, Breckinridge* and similar cases in light of the revision of the constitutional language underlying the rule.[5]

■ In *Francis v. Taylor*, 593 S.W.2d 514 (Ky.1980), this Court addressed the question of whether, in the aftermath of the 1976 amendments, the Court of Appeals had any authority *at all* to entertain a petition for an original action for the issuance of a writ of mandamus. We concluded that the Court of Appeals had that authority, but we did not address the question of whether, like the pre–1976 version of Section 110, the writ-issuing authority

granted to the Court of Appeals in Section 111(2) applies only to the control of judicial tribunals and does not extend to non-judicial officers. As explained below, we decline to address that matter now.[6]

■ Prudence teaches that "constitutional adjudication should be avoided unless strictly necessary for a decision in the case." *Spees v. Kentucky Legal Aid*, 274 S.W.3d 447, 449 (Ky.2009). Therefore, while we decline to affirm the rationale cited by the Court of Appeals for denying the Appellant's petition for a writ against Deskins, we nevertheless affirm the Court of Appeals on other grounds.

■ Mandamus is an extraordinary remedy which compels the performance of a ministerial act or mandatory duty where there is a clear legal right or no adequate remedy at law. *County of Harlan v. Appalachian Reg'l Healthcare, Inc.*, 85 S.W.3d 607, 613 (Ky.2002). It should be cautiously employed. It is not a common

---

5. Without discussing the specific constitutional language that governed our decision we held in *Minix v. Roberts*, 350 S.W.3d 449, 451 (Ky.2011), that the Court of Appeals had no authority to issue a writ of prohibition against a county attorney, because a county attorney was not a judicial officer, citing only *Commonwealth ex rel. Breckinridge v. Wise*, 351 S.W.2d 491, 492 (Ky.1961).

6. It is important to note that Sections 110 and 111 of the Kentucky Constitution relate only to the authority of Kentucky's appellate courts to entertain original actions for the issuance of writs. In the appropriate courts of original jurisdiction, common law writs of mandamus and prohibition remain viable forms of relief against public officials as may be necessary and proper to compel compliance with their ministerial duties. CR 81 ("Relief heretofore available by the remedies of mandamus, prohibition, scire facias, quo warranto, or of an information in the nature of a quo warranto, may be obtained by original action in the appropriate court."); see, e.g., *County of Harlan v. Appalachian Regional Healthcare*, 85 S.W.3d 607 (Ky.2002) (holding that a county

jailer has a statutory duty to take the necessary steps to seek an indigency determination for inmates in his county needing medical attention, and that issuance of mandamus relief was proper remedy); *Hamblen ex rel. Byars v. Kentucky Cabinet for Health and Family Services*, 322 S.W.3d 511 (Ky.App. 2010) (Governmental immunity did not bar state hospital resident from seeking mandamus relief against two public officers based on their alleged failure to perform ministerial duties as set forth in state statutes and regulations.).

We are also aware that actions to compel or to restrain specific conduct of a public official are often pursued by the injunctive procedures contained in CR 65 or a declaratory judgment action pursuant to KRS 418.040, rather than by the use of a writ. Nevertheless, under the proper circumstances, a common law writ of mandamus against a nonjudicial officer, such as a circuit court clerk, may be available in the appropriate circuit court.

means of redress and is certainly not a substitute for appeal. Aside from the question of whether the Court of Appeals has the authority to issue a writ of mandamus against Deskins, the circumstances present here do not warrant the imposition of that extraordinary remedy.

 Appellant is unable to satisfy the requirements for obtaining a writ against Circuit Clerk Deskins. First, it is not the duty of the circuit clerk to determine what orders to enter or not to enter in the court record. CR 58(1) requires that after an order is signed by the judge "[t]he clerk, forthwith upon receipt of the signed judgment or order, shall note it in the civil docket as provided by CR 79.01. The notation shall constitute the entry of the judgment or order, which shall become effective at the time of such notation." Deskins' filing of the order was not a violation of his duty. Moreover, Appellant's remedy for negating the entry of an invalid order signed, ostensibly by the judge, is to appeal. Appellant had the remedy of appeal, and she declined to do so. She is not, therefore, entitled to a writ of mandamus to compel the remedy she could have received on appeal. The denial of the writ against Deskins was not error.

## III. THE PETITION FOR WRIT OF MANDAMUS AGAINST JUDGE THOMPSON AND COMMISSIONER HATFIELD WAS PROPERLY DENIED

 Appellant also sought mandamus relief against Judge Thompson upon the basis that his recusal in her EPO case was not valid, and against Trial Commissioner

Hatfield because, according to Appellant, he was not authorized to issue EPO orders. We are unable to identify any relief available to Appellant by means of the writ of mandamus process in connection with these two domestic violence proceedings.[7]

A writ may be issued if:

(1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise, and great injustice and irreparable injury will result if the petition is not granted.

*Mahoney v. McDonald–Burkman*, 320 S.W.3d 75, 77 (Ky.2010) (citation omitted).

 Thus, fundamental to obtaining writ relief is that the lower court "*is proceeding* or is *about to proceed* outside of its jurisdiction . . . or (2) that the lower court *is acting* or is *about to act* erroneously[.]" *Id.* (emphasis added). The events surrounding the domestic violence proceedings occurred over a decade ago, and have no relevance to the present time insofar as we are able to determine. Neither Judge Thompson, nor any other lower court, "is" or "is about to" do anything in relation to these antiquated domestic violence filings. As such, this fundamental prerequisite for writ relief is not present in this case. *Hamblen ex rel. Byars v. Kentucky Cabinet for Health and Family Services*, 322 S.W.3d 511, 518 (Ky.App.2010) (citing 52

---

7. It would be manifestly absurd for the proceedings to be revived at this late date with attendant evidentiary hearings and the potential issuance of domestic violence orders based upon the outdated information contained in the original domestic violence petitions. Thus, the original domestic violence

petitions are moot in every sense of the word. See *Veith v. City of Louisville*, 355 S.W.2d 295 (Ky.1962) (Courts do not have jurisdiction to decide a question unless there is a real or justiciable controversy involving specific rights of particular parties.).

Am.Jur.2d *Mandamus* § 451 (2000)) ("The writ of mandamus is quintessentially injunctive in nature and only operates prospectively.").[8] Further, to the extent that Trial Commissioner Hatfield could be construed as having acted in a judicial capacity in issuing the EPOs in this case, he too, is not proceeding or about to proceed in any manner with regard to Appellant.

In summary, we are unable to identify any viable mandamus claim against Judge Thompson or Trial Commissioner Hatfield—they are not about to act or proceed in relation to the 2002 domestic violence filings—and thus affirm the Court of Appeals' denial of Appellant's request for mandamus relief against them.

## IV. ALLEGATION CONCERNING THE COURT OF APPEALS

In her brief Appellant alleges various instances of procedural misconduct by the Court of Appeals in processing her original action under CR 81, including the method by which the cases were assigned out to a Court of Appeals motion panel, its consideration of both of her writ petitions together by the same motion panel, and staff's participation in the process. Because of our disposition of the case, however, we need not address these claims upon the merits.

## V. CONCLUSION

For the foregoing reasons, the decision of the Court of Appeals is affirmed.

ABRAMSON, CUNNINGHAM, NOBLE, KELLER, and VENTERS, JJ. and PAUL W. BLAIR, S.J., concur. NORMAN E. HARNED, S.J., concurs by separate opinion. MINTON, C.J. and SCOTT, J., recused.

HARNED, S.J., Concurring Opinion: I concur with the result reached by the majority, however, I believe this case can be decided on narrower ground.

The source of the Petitions for Writ of Mandamus filed by Appellant in Pike Circuit Court, Court of Appeals and now this Court arise from the divorce of Appellant and Real Party In Interest Jonah Lee Stevens. The record reflects divorce and post-divorce proceedings in 2001 and 2002 that became increasingly acrimonious. Appellant has not directed us to any evidence to support her Petitions other than events which allegedly occurred in the divorce proceedings. Those proceedings apparently ended by an Order of the Pike Circuit Court entered on September 23, 2002 dismissing Cross–Petitions by Appellant and Jonah Stevens and approving an existing custody and visitation arrangement.

If the actions of the Pike County Officials were as egregious as alleged by Appellant, she could have filed a Motion for Writ during the pendency of the divorce proceedings. She did not. If Appellant felt aggrieved by the Final Decree of Divorce entered in October 2001 and from

8. In addition, even if it is true that somehow Judge Thompson failed to properly recuse and Judge Paxton was somehow improperly appointed, nevertheless the well established *de facto* officer doctrine undoubtedly confers the requisite validity to her orders dismissing the domestic violence petitions Appellant believes is lacking. *See Moorman v. Commonwealth*, 325 S.W.3d 325, 331 (Ky.2010)(quoting *Ryder v. United States*, 515 U.S. 177, 180–81, 115 S.Ct. 2031, 132 L.Ed.2d 136 (1995))

("The *de facto* officer doctrine confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient.... The doctrine has been relied upon by this Court in several cases involving challenges by criminal defendants to the authority of a judge who participated in some part of the proceedings leading to their conviction and sentence.").

the Order dismissing the Cross–Petitions for domestic violence orders and affirming a custody and visitation arrangement, she could have appealed. Appellant did not avail herself of the opportunity to seek redress of perceived grievances. Finality of judgments is an important part of our jurisprudence. If Appellant's grievances with Pike County Officials were not sufficient to pursue with the remedies available to her at the time of her divorce proceedings, certainly they are not sufficient to address at this late moment. Her claims are time barred. I agree with Footnote 7 of the Majority Opinion and would decide this case on that basis.

I would affirm the decision of the Court of Appeals for the foregoing reasons.